# LORE v. THE STATE.

1. The expiration of the term of a Court operates *ipso facto* to discharge a jury who are deliberating upon the case of one indicted for a capital offence, and the recital of the facts on the record cannot prevent a second trial; nor will errors of law in empannelling the first jury, entitle the prisoner to his discharge from the prosecution.

2. Where, after the commission of a crime, the law in respect to grand and petit jurors is modified by the legislature, and the State and accused are each entitled to a greater number of challenges, the trial will be had accordingly to the new law.

3. The first *proviso* of the last section of the act of the 9th January, 1841, "regulating punishments under the penitentiary system," means this, viz: that they who had committed offences previous to the time when the statute became operative, may be proceeded against, and if found guilty shall receive the punishment *then* imposed by law, notwithstanding its subsequent modification. The second *proviso* is merely affirmative of what the law would be without it; and the exception in that proviso, though badly expressed, was intended to prevent it from so operating as to annul to any extent the act itself.

THE plaintiff in error was indicted at the March term, 1841, of the Circuit Court of Barbour, for the murder of Henry Blake—being arraigned he pleaded " not guilty," and was put upon his trial, but the jury not agreeing in their verdict, and the term of the Court having expired, a mis-trial was ordered by the presiding Judge, and the cause continued. In the organization of the jury several questions of law arose, which

were spread upon the record, and an order made for their reference to this Court, as novel and difficult.

These questions may be thus stated:

1. One juror had formed and expressed an opinion as to the guilt of the prisoner from information derived from a credible man, who heard the examination before the committing magistrate, yet, notwithstanding the juror was objected to for cause, he was put upon the prisoner, who was forced to challenge him peremptorily.

2. Several other jurors, who respectively stated that they had formed and expressed an opinion as to the guilt of the prisoner upon rumor, were sworn, without his being permitted to ask them whether their opinion was not founded upon what they had heard from credible persons, whose information was derived from the witnesses.

After the mis-trial, and at the next term, upon affidavit of the prisoner, the venue was changed to the county of Henry, and at the term of the Circuit Court holden in that county, in April, 1842, the prisoner was tried, found guilty of murder, and sentenced to be executed. On this last trial, the Court referred the questions of law reserved upon the first, and in addition thereto, several others. Without stating the reference *in extenso*, (as the Court does not consider all the points,) it appears that the prisoner was served with a list of but thirty-six jurors, who were to pass upon his trial, though he insisted upon his right to be furnished with a panel of fifty; and after having challenged peremptorily sixteen jurors he proposed to challenge another, without cause, but the right was denied him.

The prisoner's counsel, supposing that the order of reference did not bring up all the questions which he wished to be reexamined, applied for and obtained a writ of error in vacation, returnable to this term—and the cause is now considered upon the points referred, as well as the writ of error.

PECK & CLARK, for the plaintiff in error.
ATTORNEY GENERAL, for the State.

COLLIER, C. J.—A juror who has formed and expressed an opinion as to the guilt of an individual charged with the

commission of a capital offence, upon information derived from those who were witnesses, or from having heard the examination before the committing magistrate, is certainly an incompetent trior, and should be set aside by the Court, *mero motu.* The cases of the State v. Quesenberry, [3 S. and P. Rep. 308,] and Ned v. The State, [7 Porter's Rep. 187,] are so direct and explicit on this point as not to allow it to be controverted. Upon the attempt to try the prisoner in Barbour, the law was supposed to be otherwise, and the question is, can he now avail himself of an error then committed.

The mis-trial was certainly regular, and within the competency of the Circuit Court. The expiration of the term operated *ipso facto* to discharge the jury, [Ned v. The State,] and causing that to be stated of record which the law itself effected, cannot be permitted to discharge the prisoner. But it is insisted that the errors committed by the Court in empannelling the jury, are irreparable, that they probably caused the trial to be abortive, and as the prisoner cannot be again placed in the condition he then occupied, the second trial was unauthorized. This argument cannot be maintained. If it were well founded, it would be difficult to conceive of any case in which the conviction was reversed for error in the organization of the jury, the admission of evidence, or a charge upon the law, where the prisoner could be tried again ; for in neither of these cases could his case be placed before the same jury precisely as it had been.

The case of Ned v. The State, does not lay down the law thus broadly. There the prisoner's case was withdrawn from a jury of his own selection without any assent on his part— here the prisoner was put upon his trial before a jury illegally constituted ; there the prisoner's life was actually in jeopardy— here it never was, inasmuch as a judgment of guilty would have been erroneous and reversible.

The State v. Hughes, [2 Ala. Rep. 102,] is a much stronger case in favor of the prisoner's discharge than the present.— There the verdict was received by the Court, in the absence of the prisoner, so that he was denied the privilege of polling the jury ; the judgment was reversed and a trial *de novo* awarded, the Court remarking that he could not occupy a position more favorable than he would if the right of polling had been ex-

pressly denied. But it is needless to multiply citations to this point, for the cases referred to are entirely pertinent.

The prisoner's right to be furnished with a panel of fifty jurors, and to challenge peremptorily more than sixteen depends upon the construction of the last section of the act of the 9th January, 1841, "regulating punishments under the penitentiary system." That section enacts, "that it shall be the duty of the commissioners of the penitentiary to report to the Governor of the State of Alabama, when the penitentiary building shall be ready for convicts, and that thereupon proclamation be made by the Governor of that fact; and that from and after the date of said proclamation this act shall be in full force and effect: *Provided*, That offences committed prior to the date of the said proclamation, be proceeded against and punished as theretofore: *And provided further*, That all laws and parts of laws coming in conflict with the provisions of this act, be and the same are hereby repealed, except as to any crime or punishment enumerated or provided for in this bill: *Provided*, the Governor shall not issue his proclamation before the first day of October next.

There can be no doubt that this enactment was inoperative until the proclamation of the Executive was issued, but the question is, how far do pre-existing laws continue in force as to offences previously committed? Do they only determine the measure of punishment to be inflicted, or do they ascertain the manner of proceeding and trial also? The first *proviso* was doubtless introduced to prevent those who had committed offences before the law took effect from escaping punishment, if they were not tried previously, and was not intended to continue, in reference to such cases, all the *minutia* and *formula* relating to the trial, which the old law provided. No valuable purpose would be subserved by such a requisition, and as a change in this respect was within the legitimate sphere of legislation, and was promotive at least of convenience, no reason is conceived why the proceedings preparatory to, and on, the trial, should not be regulated by the law as remodled.

The 8th section of the 10th chapter of the act modified the law as it respects the drawing and empanneling a grand jury to attend the Circuit Court, and if it does not supersede the previous enactments on the subject, so far as to authorize a

jury thus drawn and empannelled, to find an indictment for an offence committed before the Governor's proclamation issued, then the anomaly may be presented of requiring two grand-juries, differently constituted, to attend the same Court. A statute leading to such a result should be very explicit, if not imperative in its terms. We cannot avoid the unfitness and inconvenience of the thing by supposing that the legislature intended that an indictment in such case should be found by a grand jury organized under the new law, but all subsequent proceedings should conform to the old. There is nothing in the *proviso* to indicate such an intention; and if such an indictment would be valid, then is the accused entitled to be tried according to the forms which have been last prescribed. The first *proviso* amounts in effect to nothing more than this, that they who have committed offences previous to the time when the statute becomes operative, may be proceeded against, and if found guilty shall receive the punishment which the law then awarded, notwithstanding its subsequent modification.

From this view it follows, that the prisoner was entitled to a list of at least fifty persons, from whom the jury who were to try him should be selected, and was authorized to make at least twenty-one peremptory challenges, as provided by the 53–4–5 sections of the 10th chapter of the act in question; and that the denial of these rights is fatal to the conviction.

It is further argued, that the second *proviso* of the section quoted is inconsistent with itself, and in legal effect nullifies the first, and this being the case the prisoner should be discharged. This entire section was materially changed by the legislature, after the draft of the statute was submitted to them by the commissioners, and the *proviso* is not expressed with so much clearness as could be desired, yet it is believed that the want of precision will not lead to the consequences which the prisoner's counsel contends should follow.

"The declaration "that all laws and parts of laws coming in conflict with the provisions of this act be and the same are hereby repealed," was wholly unnecessary, for such would have been the tacit effect of the statute, viz: a repeal by implication of all pre-existing enactments which were not in harmony with it. The exception in the *proviso* was merely affirmative of what would have been the law independently of it,

23

though avowedly intended to prevent the repealing clause from so operating as to annul to any extent the act itself. In fact the entire *proviso* was unnecessary, and doubtless introduced *ex majore cautela.*

Other questions are raised upon the record, but they relate to irregularities on the trial, and will not in all probability arise again—we therefore, without considering them, have only to add, that the judgment of the Circuit Court of Henry is reversed, and the prisoner directed to remain in custody until he is tried, or discharged by due course of law.