# THE STATE v. SLACK.

1. The court has the power, after a conviction for a felony, to grant a new trial, with the consent of the prisoner, and the verdict and judgment will be no bar to his being again tried for the same offence.

THIS case was brought from the Circuit Court of Fayette on points reserved by the presiding judge as novel and difficult.

The prisoner was indicted for the murder of a slave. The jury found him guilty of murder in the second degree, and the court sentenced him to imprisonment in the penitentiary for ten years.

A motion was made for a new trial, because the verdict of the jury was contrary to law and evidence; which motion was allowed by the court, and a new trial granted, if this court should be of the opinion that a new trial can be granted in such a case as this.

ATTORNEY GENERAL, for the State. The provision of the constitution of the United States, that "No person shall be twice put in jeopardy of life or limb for the same offence," is an ancient maxim of the common law; and to that source we must look to ascertain its meaning. It is by the force of this acknowledged maxim of the common law, that a prisoner cannot, after an acquittal, be again tried for the same offence; and the same rule applies where he is convicted. No case can be found in the English books in which a new trial has been granted, where the trial has been regular, and the jury has passed upon the prisoner's guilt. He cited 2 Sumner, 19.

MARTIN & HUNTINGTON, *contra,* were stopped by the court.

They referred to 7 Porter, 217; 3 Dall. 315; 2 Mass. 303; 1 Blackford, 395; 6 S. & R. 577; State v. Fisher, McCord's Rep. 264; 18 Johns. 212; 1 Johns. C. 104.

ORMOND, J.—The humane maxim of the common law, that no one shall be twice put in jeopardy of life or limb for the same offence, has been engrafted on the constitution of the United States, and adopted into our bill of rights.

In the case of the State v. Ned, [7 Porter, 217,] we had occasion to consider the effect of this maxim upon the rights of a prisoner who had been put on his trial in a capital case, and the jury discharged from rendering a verdict because they had declared they could not agree; and it was then held, that he was entitled to his discharge—that having been once in peril of his life, he could not again be put upon his trial for the same offence, unless the jury had been discharged from rendering a verdict from the clear and pressing necessity of the case, which necessity did not exist in that case.

In this case, a regular trial has been had, and the jury have found the prisoner guilty; and the only question is, whether, with his consent, a new trial may not be granted.

The common law maxim and the provision in our bill of rights were, beyond all controversy, designed to protect the lives and liberties of the people—it is the privilege of those who have been tried for the commission of crime, not to be again tried for the same offence; and it would seem to be a perversion of the principle to give it such a construction as to prevent the accused from waiving it when it is clearly his interest to do so. It is true that the common law did not permit one on trial for a felony to consent to any thing which could operate to his prejudice: his consent, therefore, to an irregularity upon his trial, would not conclude him from afterwards taking advantage of it.

This principle is fully illustrated in the case of Alexander and Charles Kinlock, tried for high treason in 1746. In that case, after the prisoners had pleaded not guilty, and a jury were impannelled, on the motion of the prisoners, they were permitted to withdraw their plea, and the jury were discharged, to permit them to plead to the jurisdiction of the court. The plea to the jurisdiction being overruled, and the prisoners again put upon their trial and found guilty, moved in arrest of judgment, the dis-

charge of the jury first impannelled. The motion was *based* upon the maxim, that having been once in peril of life, they could not again be put upon their trial, and that they were incapable of consenting to any irregularity upon the trial. The question is argued at great length upon the motion by Mr. Justice Foster, and he shows that the prisoners could not avail themselves of the permission, given at their request, to withdraw a juror, because it was a privilege accorded to them by the court. "Not to bring their lives twice in jeopardy, (which is one great inconvenience of discharging juries in capital cases,) but merely to give them one chance for their lives, which it was apprehended they had lost by pleading to issue." [Foster's Crown Law, 37.]

In England, when doubts arise as to the propriety of a conviction in a case of felony, the practice has been, for many years, not to grant a new trial, but to recommend the prisoner to mercy, and a pardon is the invariable result. And in the King v. Mawbey, [6 Term, 638,] we find Lord Kenyon laying down the rule to be that "in offences greater than misdemeanors, no new trial can be granted at all." It is said there is no instance of a new trial having been granted after a regular conviction for a felony in that country, in the last three hundred years. [Chitty's Crim. Law. 3 Am. ed. 654; 2 Russell on Crimes, 530; 13 East. 416.]

In this State, and in many other States of the Union, the rule has been different, and the practice has been to grant new trials in capital cases, at the instance of the prisoner, where a well founded doubt exists as to the propriety of the conviction. [The United States v. Fries, 3 Dall. 315; Commonwealth v. Green, 17 Mass. 515; People v. McKay, 18 Johns. 212; 1 Blackford, 395.]

In the case of the United States v. Gilbert, [2 Sumner, 19,] Mr Justice Story, after an elaborate examination of this question, has attained the conclusion that a new trial can be granted in a capital case where the jury, for sufficient cause, has been discharged from giving a verdict. He denies that any instance can be found in which the English courts have granted a new trial in such a case, where the indictment was sufficient, and there has not been a mistrial, and agrees that no such right exists in this country.

It is certain, as already stated, that the English courts in modern times do not grant new trials in cases of felony, but accomplish the same object by a recommendation to the crown for a

pardon, which is always granted. It does not, however, follow that it is against the principles of the ancient common law that the court should have power to grant a new trial when a doubt exists as to the correctness of the verdict. It would seem to be much more consistent with the spirit of humanity which pervades it, that a new trial should be granted by the court, than that the prisoner should depend on the mercy of the executive.

It cannot be questioned, that the clause in our bill of rights, upon which we have commented, was intended for the protection of the citizen, and it would be a mockery to put such a construction upon it as will make it operate to his prejudice. We are, for these reasons, of the opinion, that the court may, with the consent of the prisoner, grant a new trial after a conviction for a felony; and that the verdict and judgment will be no bar to his being again tried for the same offence.

Let the judgment be reversed, and the cause remanded for another trial.