# REPORTS

OF

## CASES ARGUED AND DETERMINED

### At January Term, 1860.

———◦–◦–◦❀◦–◦–◦———

## HUGHES *vs.* THE STATE.

[INDICTMENT FOR RETAILING SPIRITUOUS LIQUORS.]

1. *Discharge of jury by consent.*—The prisoner having consented, in order to avoid a continuance of the case on the part of the State, on account of the intoxication of a material witness for the prosecution, that the cause might be withdrawn from the jury, if it appeared in the progress of the trial that the said witness was too much intoxicated to testify intelligibly ; and the contingency provided for by the agreement having occurred,—the court may discharge the jury, against the defendant's objection.

2. *Error without injury in rejection of bad plea.*—The refusal of the court to permit the filing of a plea, which is substantially defective, amounts only to error without injury.

3. *Election by prosecution.*—On the trial of a retailing case, the indictment being in the form allowed by the Code, and containing but a single count, the prosecuting attorney introduced a witness, " and asked him as to his having bought liquor from the defendant ; to which the witness replied, that he. had bought liquor from the defendant in small quantities ; and the solicitor then asked him, whether he had bought in less quantities than a quart ; to which he answered, that he had never bought in quantities less than a gallon, and had never drunk it on the defendant's premises. The solicitor immediately stated, that he did not intend to elicit said testimony, nor wish to be bound thereby ; and before any cross-examination, and without ob_ jection on the part of the defendant, called the witness from the stand,— stating that he did not rely on anything said by the witness." *Held*, that this did not constitute an election by the prosecuting attorney, which would preclude him from afterwards proceeding for a different offense. (A. J. WALKER, C. J., *dissenting.*)

4. *Charge ignoring proof of time and venue.*—A charge to the jury in a criminal case, authorizing them to find the defendant guilty without proof that the offense was committed in the county in which the indictment was found, and within the time prescribed by the statute of limitations, is erroneous·

APPEAL from the Circuit Court of Perry.
Tried before the Hon. A. A. COLEMAN.

THE indictment in this case was in the form prescribed by the Code, and charged the defendant, in a single count, with selling vinous or spirituous liquors without a license. The bill of exceptions is as follows :

" When this case was called, the solicitor for the State suggested, that a material witness for the prosecution was too much under the influence of intoxicating liquor to testify intelligibly ; and asked that the cause might be continued, or laid over. But the defendant, by his counsel, objected to a continuance of the cause, on account of the rapid accumulation of costs, and to avoid the same ; and, for this reason, asked the court to let the cause proceed. The court then stated, that the case might then be put to the jury, as insisted on by the defendant, upon the express understanding and agreement, that if it should appear in the progress of the trial that the said witness, Henderson Logan, was too much intoxicated to testify intelligibly, the case was to be withdrawn from the jury, the witness detained in custody until sober, and the defendant to have a trial at this term. To this understanding and agreement, as above mentioned by the court, the defendant, by his counsel, agreed and consented ; and thereupon the case was submitted to a jury, and the defendant pleaded not guilty to the indictment. The solicitor then placed Perry Logan on the stand, a witness sober and competent, and asked him as to his having bought liquor from the defendant ; to which the witness replied, that he had bought liquor from the defendant in small quantities ; and the solicitor then asked him, whether he had bought in less quantities than a quart ; to which the witness answered, that he had never bought in quantities less than one gallon, and had never drunk it on the defendant's premises. The solicitor immediately stated,

that he did not intend to elicit said testimony, nor wish to be bound thereby; and before any cross-examination, and without objection on the part of the defendant, called the witness from the stand,—stating that he did not rely on anything whatever said by the witness. The solicitor then called Henderson Logan, the witness said to be drunk as above stated, and proceeded to examine him as to his having bought liquor from the defendant, and asked him whether he had ever bought it from the defendant in quantities less than a quart. It was manifest that the witness was drunk—too much intoxicated to testify; and thereupon the court, on account of the condition of the witness, withdrew the case from the jury, and directed the sheriff to imprison the witness in jail until he was duly sober, and until he was released from custody by the court. The defendant, by his counsel, objected to the withdrawal of the case from the jury, on the ground that, having been put on his trial upon the evidence of Perry Logan, he was not bound by his consent, as hereinbefore first above stated, and that there was no sufficient ground for withdrawing the case from the jury. But the court withdrew the case as aforesaid, against the defendant's objection, and refused to let the case proceed.

"On the day following, the said Henderson Logan having been brought into court, and ascertained to be sober, the case was again submitted to a jury, but not the same as on the former day. The defendant, by his counsel, proposed to plead a former acquittal, setting forth what had occurred on the day previous, and tendered the following plea: 'The defendant pleads, in short by consent, that at the present term of this court, he was charged upon this identical indictment for the identical offense charged therein, and for which he is now on his trial; that for his plea to said indictment he said that he was not guilty, and issue was thereupon joined by the State, and said case was put to a jury of twelve good and lawful men, in said court empanneled and sworn to try the issue so joined; that Young L. Royston, who prosecuted on behalf of the State of Alabama, thereupon proceeded to

examine witnesses to prove the issue on the part of the State; and that after said cause had been put to said jury, so elected as aforesaid, upon the issue joined as aforesaid, and after the said solicitor had proceeded to examine witnesses to prove said issue on the part of the State, the honorable circuit court of said county, without the consent of this defendant, and against his objection, withdrew the said case from the said jury, when in truth and in fact there existed no necessity for the withdrawal of said case from the jury; all of which this defendant is ready to verify.' The court refused to let the defendant file said plea, on the ground that he having made the agreement aforesaid in open court, and consented to the withdrawal of the case, before it was submitted, if it should appear that said Henderson Logan was intoxicated, and it was manifest that said witness was drunk, and the case was withdrawn from the jury in conformity with the agreemeent so made,—the court therefore declined to entertain the said plea, or to require the State to take issue thereupon; to which ruling of the court the defendant, by his counsel, excepted.

"The defendant having then pleaded not guilty, and issue being joined by the State, the solicitor for the State then proceeded to examine the said Henderson Logan as a witness. To this the defendant objected, on the ground that the solicitor, having examined Perry Logan as a witness on the day previous, as to another selling to him, the said Perry Logan, had thereby made his election; and moved the court to hold him to the election thus made, and to exclude from the jury any evidence of any other selling. The court refused to do this, and the defendant excepted. The solicitor then proceeded to examine said Henderson Logan, as to purchases made by him from the defendant; and said witness testified to purchases made by him from the defendant by the quart, in said county, and within twelve months before the finding of the indictment. The State then proved, by other witnesses, that said Henderson Logan, before and at the time of such sales to him, was a man of known intemperate habits; that he had for a long time lived in the

immediate neighborhood of the defendant, and, during the greater part of the twelve months before the finding of the indictment, had been in the actual employment of the defendant, and lived at his house, and was thus living at his house at the time of the said sales to him.   To the introduction of all this testimony the defendant objected, on the ground that the solicitor had elected as to selling · in quantities less than a quart, and that there was but one count in the indictment ; but the court overruled the objection, and admitted the evidence ; to which the defendant excepted.

"The court charged the jury, (among other things,) that if they believed from the evidence that the defendant sold spirituous liquors by the quart to (Henderson Logan) a person of known intemperate habits, and a knowledge of these habits was brought home to the defendant, then they must find him guilty; and that in their inquiries as to whether a knowledge of such intemperate habits was brought home to the defendant, they were authorized to look to the evidence of the defendant and said Logan living in the same neighborhood, and Logan residing in the defendant's house, and being in his employ, and all other like circumstances in the case; to which charge the defendant excepted."

P. LOCKETT, for the prisoner.—1. The agreement, which is relied on to justify the action of the court below in discharging the jury, is not susceptible of the construction put on it by that court.   It contemplated no trial of the cause whatever,—certainly no trial on the testimony of any other witness than Henderson Logan.

2. The court erred, in imposing as the condition of a trial that the prisoner should consent to such an agreement.   He was not in a condition to exercise a free choice in accepting or rejecting the agreement, and it should never have been proposed to him.—Wesley v. The State, 11 Humph. 504 ; 3 Harris, 468 ; 1 Ch. Rep. 420 ; Foster's C. L. 36.

3. If the agreement is susceptible of the construction placed on it by the court below, it is null and void, and

can have no effect on the prisoner's constitutional rights. The prisoner's consent cannot make that lawful which is unlawful. He was put in jeopardy by the trial commenced on the first day, and could not, by the express terms of the constitution, be again put in jeopardy for the same offense. If a constitutional right may be waived, a positive constitutional prohibition certainly cannot be. The prisoner's consent that the trial should be by ancient wager of battle, or by the ordeal, could not make such a trial a proceeding "by due course of law;" yet the same argument which sustains the validity of the agreement in one case, is equally applicable to the other. On this point, the following authorities are relied on : Commonwealth v. Cook, 6 Serg. & R. 592; Commonwealth v. Shaw, reported in Amer. Law Register for March, 1859; p. 295; Rex v. Woolf, 1 Ch. R. 420; 11 Humph. 504; 3 Harris, 468; 1 Harris, 627; Foster's C. L. 36; Mounts v. The State, 14 Ohio, 295.

4. The solicitor waived the agreement, by going to trial on the testimony of another witness, and attempting to prove by him a totally distinct offense. He should not be allowed to speculate on the chances of a conviction without the agreement, and yet retain rights under it. If he had the right thus to examine one witness, he had an equal right to examine one hundred ; and if he had thus made out his case before introducing the witness Henderson Logan, no one would contend that the prisoner had a right to have the jury discharged on account of the condition of that witness.

5. The court erred, also, in refusing to entertain the plea of former acquittal, when tendered by the prisoner. The plea involved an issue of fact, on which the prisoner had a right to have a jury pass ; and he had a right to file as many pleas as he thought his defense required.—Greenwood v. The State, 5 Porter, 474. As well might a judge, who saw the commission of the offense by the prisoner, refuse to entertain a plea of not guilty.

6. The court erred, also, in not holding the solicitor to the election which was manifested by his examination of the first witness, notwithstanding his declaration that he

did not rely on anything said by that witness. The questions propounded to the witness had no reference whatever to the offense subsequently proved by Henderson Logan, and could not have been intended to elicit evidence of it ; and if they are not sufficient to show an election by the solicitor to proceed for the offense of selling to the first witness, they certainly amount to an election to proceed for the offense of selling, either to him or to some other person, in quantities less than a quart.—Elam v. The State, 26 Ala. 48 ; Mayo v. The State, 30 Ala. 33 ; Cochran v. The State, 30 Ala. 542.

7. The charge of the court was erroneous, because it authorized the jury to find the prisoner guilty, without proof of the fact that the offense was committed within the body of the county, and within twelve months before the finding of the indictment.—Corbett v. The State, 31 Ala. 139 ; Huffman v. The State, 29 Ala. 40.

M. A. BALDWIN, Attorney-General, *contra.*—1. The principal question in the case is, whether the agreement set out in the bill of exceptions authorized the court to discharge the jury. It is admitted, that a prisoner cannot be twice put in jeopardy for the same offense, and that legal jeopardy commences the moment a traverse jury is empanneled, sworn and ready to try him ; and, as a consequence of these propositions, that the discharge of the first jury, but for the agreement, would have been tantamount to an acquittal. But it is insisted that, under the agreement, the prisoner never was in legal jeopardy before the first jury ; in other words, that the effect of the agreement was to postpone the commencement of his legal jeopardy until the happening of the contingency provided for. The validity of the agreement cannot be questioned. It was always the law that a juror may be withdrawn by consent, and that is the simple effect of the agreement. The right not to be twice placed in jeopardy for the same offense, like any other legal right or constitutional privilege, may be waived.—1 Bishop on Criminal Law, 657, 672–3; The State v. Gurney, 37 Maine, 156 ;

The State v. Slack, 6 Ala. 676; Commonwealth v. Cook, 6 Serg. & R. 577; Rosenbaum v. The State, 33 Ala.

2. If the above principles are correct, the plea of former acquittal, being violative of the agreement, ought not to have been received; or its rejection by the court was, at most, error without injury.

3. There was no election by the prosecuting officer, as to the particular offense for which he would proceed, when the witness Perry Logan was examined before the first jury.—Elam v. The State, 26 Ala. 48; Cochran v. The State, 30 Ala. 546; Mayo v. The State, 30 Ala. 33; 1 Chitty's Crim. Law, 254.

4. There is no error in the charge of the court.—Brown v. The State, 27 Ala. 47; Salamon v. The State, 27 Ala. 26; Huffman v. The State, 28 Ala. 48; S. C., 29 Ala. 40; Farrall v. The State, 32 Ala. 559.

A. J. WALKER, C. J.—The defendant in this case had been previously put upon his trial, and the jury was discharged after the commencement of the examination of the witnesses. The discharge was ordered upon the authority of an agreement, made before the jury was empanneled. We understand that agreement to have been, that if a certain person, summoned to testify on the part of the State, should, during the progress of the trial, be incapacitated by intoxication to testify intelligibly, the jury should be discharged. The agreement was voluntarily made by the accused, as the condition upon which the court overruled the application on the part of the prosecution for a continuance on account of the witness' alleged drunkenness, and yielded to the solicitude of the accused for a trial. The contingency of the incapacity of the witness by reason of intoxication occurred, and the court discharged the jury, in despite of the defendant's objection. There can be no distinction in principle, between a consent given before the trial, that, upon the occurrence of a certain contingency during the trial, the jury shall be discharged, and a consent to the discharge of the jury given at the time when the discharge is ordered. If the defendant have capacity to bind himself by the

consent in the latter case, he may in the other. The question, therefore, is the general one as to the competency of a defendant to waive his right to a verdict from a jury charged with his trial, and, by his consent, to subject himself to a second trial for the same offense.

The general rule laid down by Lord Coke, unless regarded as subject to exceptions, would deny the power of discharging a jury, in a case of felony, under any circumstances; and in a note to Chedwick v. Hughes, Carthew's R. 464, Lord Holt is represented to have said, when sitting a case of perjury, in 1698, that it was the opinion of all the judges in England, upon debate between them, "that in capital cases a juror cannot be withdrawn, though all parties consent to it."—King v. Perkins, Holt's R. 403. In the case of the Kinlochs, decided in 1746, it was held, after the most able and 'elaborate argument, and the fullest consideration by the judges, that the general rule of Lord Coke was subject to exceptions; the authority of the reported representation by Lord Holt, as to the opinions of all the judges of England in 1698, was repudiated; and defendants charged with treason, who had been previously put in jeopardy, were nevertheless tried and convicted, because they had consented to the discharge of the jury on the first trial.—Foster's Crown Law, 27–39. We can find no case since the decision last named, in which the authority of the court to discharge the jury, with the consent of the accused, has ever been denied; but, on the contrary, the authority has since been recognized by a long chain of decisions, both in England and America, and the principle is established in Alabama jurisprudence.—State v. Slack, 6 Ala. 676; Cobia v. State, 16 Ala. 781; Ned v. State, 7 Porter, 187; State v. Hughes, 2 Ala. 102; Lore v. State, 4 Ala. 173; McCauley v. State, 26 Ala. 135, 144; Rex v. Stokes, 6 C & P. 151; 1 Bishop on Crim. Law, § 673; Wharton's Crim. Law, § 591; Hawkins' Pleas, book 2, ch. 47, § 1; Commonwealth v. Cook, 6 Ser. & R. 590.

The principle upon which rests this doctrine of the defendant's capacity to consent to the discharge of the jury is, that the constitutional immunity against a second trial

is for his benefit, and he may waive it.—Rosenbaum v. State, 33 Ala. 354. By the exercise of the wise, humane, and just discretion, which, it is believed, characterizes the conduct of the bench of our country towards accused persons, the defendant can always be protected from importunities to consent to a discharge of the jury, a refusal of which might operate to his prejudice, and also from the making of such consent where it would not be for his benefit.

Gresley, in his work on Equity Evidence, (p. 40,) says, that Lord Kenyon declared that no consent on earth could warrant the examination of a witness on interrogatories in criminal cases. We have not been able to find the case in which Lord Kenyon is represented to have made that declaration. If such declaration was made by Lord Kenyon, we would not feel justified, upon its authority, to affirm the incapacity of an accused person to consent to a mistrial.

It was decided in England, that a peer of the realm could not waive his trial by his peers, and put himself on a trial by the country.—Lord Dacre's case, Kelyng's R. 56; Lord Audley's case, 1 State Trials, 387; 2 Wooddeson's Vinerian Lectures, 581. The reason given in Lord Audley's case was, that the trial of a peer by his peers was no privilege, but the law declared by *magna charta*. This reason is adopted by Wooddeson, who says, "that this mode of trial is not so properly a privilege of the nobility, as part of the indispensable law of the land, like the trial of commoners by commoners, enacted, or rather declared by *magna charta*."—See 2 Wooddeson's Viner. Lec. 581.

The New York court of appeals, in the case of Cancemi v. The People, (4 Smith, 128;) and the court of quarter-sessions for Alleghany county, Pa., in the case of the Commonwealth v. Shaw, reported in the American Law Register for March, 1859, have decided, that a defendant in a criminal case could not consent to a trial by eleven persons, and waive his right to a trial by the constitutional number of twelve. These decisions, as well as the English decisions above referred to, may be defensi-

ble upon the ground, that the consent, which the defendant was deemed incompetent to make, would have the effect of changing the nature of the tribunal appointed for the trial of persons charged with the commission of crimes; and such seems to be the ground upon which they are put. Those decisions may be right, and yet there may be a capacity to consent to a mistrial. It may well be that a defendant in a criminal case may be denied the power of changing the very *nature* of the tribunal prescribed by the constitution, and yet be allowed to concur in a discharge of the jury empanneled for his trial.

[2.] If the court erred in refusing to permit the defendant to file his plea, it was error without injury; because the bill of exceptions affirmatively discloses—and it seems to have been conceded by the defendant—that the design of the plea was to bring forward the very matter, which, we have seen, constituted no defense. There can be no injury from the rejection of a plea, which we know could not have been sustained.—Hailey v. Falconer, 32 Ala. 536.

[3.] In my opinion, the State made its election to prosecute for a selling to Perry Logan; and upon the principle settled in Elam v. State, 26 Ala. 48, and Cochran v. State, 30 Ala. 542, should not have been permitted afterwards to prosecute for selling to Henderson Logan, a man of intemperate habits. But my brethren think differently, and submit the following views in support of their opinion:

The present indictment contains but a single count; and it is contended for the plaintiff in error, that the prosecution, by the conduct of the solicitor on the day when the trial was first entered upon, had elected to proceed for the selling which was testified to by Perry Logan. It is difficult to lay down a clear rule, which will enable the circuit courts to determine, in all cases, *when* the prosecutor has made his election of the particular *act* or *offense*, for which he will proceed in the given case. Some latitude must be allowed to that officer while conducting the preliminary examination, that he may ascertain the particular act or transaction to which the witness refers. To

24

require him to elect, before he has learned enough to enable him to individualize the transaction, would, in many cases, work a denial of justice. When, however, he has pursued the inquiry until a particular act or transaction has been brought before the minds of the jury—has become identified or individualized—if he then prosecute the inquiry with the view of learning the details and particulars of that act or transaction, he must then be held to have made his election. Less than this will work manifest injustice to the prosecution; more might lead to great oppression, by tolerating an experimental inquisition into every kindred transaction of the defendant's life.

Let us apply these principles to this case. When the witness had answered that the defendant had sold him liquors in small quantities, he (the witness) was asked whether he had bought in quantities less than a quart. A full answer to this question would have been, yes, or no. This, it seems to us, was at most an attempt to individualize an act. There is nothing in the question which called for the particulars or details of any individualized act. The answer of the witness went farther. He not only stated that he had bought of defendant in quantities of a gallon, but added—of his own volition, so far as we can discover—that the liquor thus bought was not drunk on the premises of the seller. There is nothing in the conduct of the solicitor, which enables us to affirm that he sought to bring out the details of any sale, in quantity of a quart or upwards; and we do not think the unsolicited response of the witness, as to *where* the liquor was drunk, can be regarded as determining the solicitor's election.

[4.] The charge given by the court was erroneous, because it authorized a conviction of the defendant, without proof that the offense was committed in the county, and within the time prescribed by the statute of limitations; and for this error, the judgment of the court below must be reversed, and the cause remanded.—Corbett v. State, 31 Ala. 329.