## ELIZA (A FREEDWOMAN) *vs.* THE STATE.

[INDICTMENT FOR GRAND LARCENY.]

1. *Applicability of general criminal statutes to freedmen.*—The general criminal statutes of the State are applicable to offenses committed by freedmen since the abolition of slavery, although they were not applicable at the time of their enactment to the persons who are now freedmen: such an application of the statutes is not obnoxious to the constitutional prohibition against *ex-post-facto* laws, nor violative of

the provision contained in the 8th section of the bill of rights, which
declares that no person shall be punished, "but by virtue of a law es-
tablished and promulgated prior to the offense."

2. *Personal presence of prisoner in court when sentence is pronounced.*—To
sustain a judgment and sentence on conviction for a felony, the record
must affirmatively show that the prisoner was personally present in
court when the sentence was pronounced; and this does not appear
with sufficient certainty from the following recitals in the judgment-
entry: "This day came the solicitor and *the defendant*"; and "It is there-
fore considered by the court," &c.. " that the defendant *be taken hence*
to the jail of the county," &c.

FROM the Circuit Court of Tuskaloosa.
Tried before the Hon. WM. S. MUDD.

THE indictment in this case, which was found at a special
term of the court held in November, 1865, contained two
counts; the first count describing the defendant as "Eliza,
a freedwoman of color," and the second as "Eliza, a free
person of color." The defendant went to trial on the plea
of not guilty, without objection to the indictment. The
judgment is in the following words: "This day came S. A.
M. Wood, solicitor, and the defendant; and the defendant,
being charged on the bill of indictment, pleads thereto not
guilty, and for trial puts herself on the country; and the
solicitor doth the like. Thereupon came a jury," &c., "who,
upon their oaths, do say, 'We, the jury, find the defendant
guilty in manner and form as charged in the indictment,
and assess the value of the goods stolen at fifty dollars.'
It is therefore considered by the court, that the State of
Alabama, for the use of Tuskaloosa county, recover of said
defendant the costs of this prosecution, for which execution
may issue. It is further ordered by the court, that the said
Eliza, a freedwoman, be confined in the penitentiary of the
State of Alabama, for the term of five years; and that she
be taken hence to the jail of Tuskaloosa county, there to
remain until the adjournment of this court; and that she
be taken from said jail, within the time prescribed by law,
and delivered to the proper officers of the penitentiary," &c.
There is no bill of exceptions in the record, and the case is
brought up by writ of errror.

Eliza (a freedwoman) v. The State.

WM. R. SMITH, for the prisoner.
JOHN W. A. SANFORD, Attorney-General, *contra.*

JUDGE, J.—There is no bill of exceptions in this case ; and it does not appear, except by inference from one count of the indictment, that the prisoner was ever a slave. That count describes her as a "freedwoman of color"; and this, it is contended, is an admission of the fact, that she was one of the class known as freedmen, who had been emancipated by the war. We will take this hypothesis to be true, as it does not affect our decision of the case.

The prisoner appears to have been indicted under section 3173 of the Code ; and this section having been promulgated as not applicable to slaves, it is contended that it is not applicable to freedmen, as the change of *status* does not so operate on the law as to give it a new meaning, and a new promulgation.

It was intended in the construction and arrangement of the criminal code of this State, that every person who might commit crime, no matter to which of the different classes of persons in the State he might belong, should not escape punishment for the want of a law to reach his case. Accordingly, provisions were adapted respectively to slaves, to "free persons of color," and to all other persons ; and although the results of political convulsion and war have, to some extent, destroyed its symmetry and consistency, yet, in the main, it is still adapted to the punishment of crime, in all classes now existing. It was framed to operate through all time, unless abrogated or repealed ; and to operate upon all persons who might at any time come within its influence, either by birth, by immigration, or otherwise. Doubtless it was not contemplated, at the time of its adoption, that one class, then existing, would cease to exist as a class ; yet, on the happening of that event, the persons who composed the defunct class, *eo instanti,* became persons of another class provided for ; and thus becoming of this other class, there is, as to them, no *hiatus.* Emancipation changed their servile *status ;* but, on becoming freedmen, they remained as persons ; and as persons they are amenable to the existing laws.

The fact that this class have not become free by their own seeking, but by a political convulsion, in which they took no part, can not affect their amenability to the laws. If a vessel should be wrecked on the coast of the State, and the crew be compelled to seek refuge and protection within its limits; while in the State they would certainly be amenable to its laws. And yet it might be said of them, as it is of the freedmen, that they were forced, by an overpowering necessity, under the influence of the laws, and that there could have been no knowledge, or legislative intention in regard to them, when the laws were passed. Again, it has occurred more than once, in the history of the State, that slaves have been emancipated by their owners, and afterwards, by special legislative enactment, been permitted to reside in the State; and yet, it has never been supposed, as we are aware, that these freedmen were not under the influence of the criminal laws applicable to free persons of color.

But it is contended, that the criminal statutes of the State, now of force, were promulgated in such manner, that they are not now applicable to the freedmen who were slaves when they were promulgated; and that section eight of the bill of rights declares, that "no person shall be punished, but by virtue of a law established and promulgated prior to the commission of the offense."

It has been repeatedly held by this court, that all statutes are in force from the date of their passage, when no time is fixed for the commencement of their operation; and this is the rule of the common law, and is applicable to criminal as well as other statutes.— *Weatherford v. Weatherford,* 8 Porter, 174; *The State v. Click,* 2 Ala. 26; *Thompson v. Stickney,* 6 Ala. 579; *Bank v. Murphy,* 8 Ala. 119; see, also, 1 Bishop's Criminal Law, § 59. When, therefore, a criminal statute has been passed, it is "established and promulgated" within the meaning of the bill of rights.

[2.] In looking into the record in this case, we find a fatal error, which must reverse the judgment below. In the judgment-entry, it does not sufficiently appear that the prisoner was personally present in court, when she was tried and sentenced. The entry recites, that "this day

came S. A. M. Wood, solicitor, and the defendant," &c.; and it also recites, "that she be taken *hence* to the jail of Tuskaloosa county," &c. These recitals are not sufficient to make it affirmatively appear that the prisoner was present *in person*, both during the trial, and at the time of the sentence. The rule is well settled, in England, and in this State, and is inflexible, that a prisoner, accused of felony, must be arraigned in person, and must plead in person; and in all the subsequent proceedings, it is required that he shall appear in person.—2 Leading Crim. Cases, and authorities there cited; *Young v. The State*, decided January term, 1865. In *Dunn v. The Commonwealth*, (6 Barr,) the following recital in the record was held to be insufficient evidence of the personal appearance of the prisoner, at the passing of the sentence: "The court sentenced George Dunn, the defendant, to be taken to jail, &c., from whence *you* came," &c. In *Scaggs v. The State*, (8 Sm. & Mar. 722,) it was held, that the prisoner's presence could not be inferred from a recital that he asked a witness certain questions; as they may have been in writing. In the case at bar, the prisoner may have appeared *by attorney;* and it is not permissible to resort to argumentative inference, to ascertain that she appeared *in person:* that must clearly affirmatively appear.

For the error above named, the judgment must be reversed, and the cause remanded; and the prisoner must remain in custody, until discharged by due course of law.

A. J. WALKER, C. J., dissents from any expression in the opinion, which may be regarded as intimating that slavery was abolished in the State otherwise than by the action of the convention, but assents to the opinion in all other respects.