Waller (a freedman) .v. The State.

## WALLER (A FREEDMAN) *vs.* THE STATE.

[INDICTMENT FOR RAPE.]

1. *Calling juror.*—There is no statute, or rule of practice, which requires that when a person, specially summoned as a juror in a case of felony, being called at the clerk's desk, fails to answer to his name, he should also be called at the door of the court-house, or that an officer should be sent for him; and the refusal of the court to have him thus called or sent for, at the request of the prisoner, is not erroneous.

2. *Competency and discharge of juror having fixed opinion against capital punishment.*—In a capital case, a juror who states, in answer to a question by the court, that he has a fixed opinion against capital punishment, may be challenged for cause by the State, (Penal Code, § 630,) or may be set aside by the court, *ex mero motu,* although he also states, in answer to questions by the prisoner, "that if he was on the jury, and the law required him to convict, he would do so, notwithstanding the punishment might be capital."

3. *Rape; force, as constituent of.*—To authorize a conviction for rape, it is not necessary that the proof should satisfy the jury that the force used "was such as to create a reasonable apprehension of death" on the part of the female.

4. *Same; penetration, and emission.*—Proof of penetration alone is sufficient to sustain an indictment for rape, (Penal Code, § 642,) when the act is shown to have been committed forcibly, and against the consent of the female.

5. *Verdict; personal presence of prisoner, and amendment of.*—In a case of felony, it is error to allow the verdict of the jury to be received by the clerk, during a recess of the court, in the absence of the prisoner, even though this be done with the consent of his counsel; and it is also error to allow an amendment of the verdict, unless the record affirmatively shows that the prisoner was present in the court at the time.

6. *Second trial after reversal of former conviction.*—Where a judgment of conviction in a criminal case is reversed, on error or appeal, at the instance of the prisoner, he may be tried again; even where the verdict is informal, or insufficient to sustain a conviction.

FROM the Circuit Court of Dallas.

Tried before the Hon. JOHN MOORE.

THE indictment in this case was returned into court on the 27th November, 1866, and charged that "William Waller, a freedman, forcibly ravished Sarah Rose, a freedwoman." " On the trial," at the same term, as the bill of exceptions states, "while the empanneling of the jury was going on, the name of Joseph Hardie, which was on the copy of the *venire* served on the prisoner, was drawn from the hat by the sheriff, and was called aloud at the clerk's desk; but he did not answer. It was conceded that said juror lived in Selma, and about a half-mile from the court-house. The defendant asked the court to have him called at the door of the court-house, or to send an officer for him, and have him brought into court; but the court refused to do so, and the defendant thereupon excepted. One B. J. Duncan was also on the list of jurors served on the defendant, and resided in Selma; and when his name was drawn from the hat, was called aloud from the clerk's desk, but did not answer. The defendant asked that he also might be called from the door; which was also refused, and the defendant excepted. The names of all the jurors in the *venire* being called before the jury was completed, the court ordered the requisite number to be summoned from the bystanders; to which the defendant objected, until those named had been called at the door, or sent for; which the court still refusing to do, the defendant again excepted.

" T. B. Pierce, one of the tales-men thus summoned from the bystanders, his name being drawn from the hat, was

sworn to answer questions, and was asked by the court if he had a fixed opinion against capital punishment; to which he replied, that in case of a white man he had; and he was then told by the court to stand aside. The defendant's counsel then asked permission to ask him a question, and was permitted to do so; and in reply to the question so put to him, said Pierce stated, that if he was on the jury, and the law required him to convict the defendant, he would do so, notwithstanding the punishment might be capital. The defendant then insisted that said Pierce was a competent juror; but the court thereupon again propounding the question as prescribed by law, and the juror replying, in a very decided manner, that he did have a fixed opinion against capital punishment, the court directed him to stand aside as incompetent; and defendant excepted."

After the evidence was closed, " the defendant asked the court to instruct the jury, that unless they find the force used was such as to create a reasonable apprehension of death, they must find for the defendant"; also, "that rape cannot be committed without emission." The court refused each of these charges, and the defendant excepted to their refusal.

" The court then asked the defendant's counsel, if they were willing for the clerk to receive the verdict of the jury; to which they consented. The judge then withdrew from the court-room for the day. After deliberating a short time, the jury returned with the following verdict, 'We, the jury, find the defendant guilty as charged in the indictment, and recommend him to the clemency of the governor'; and they then dispersed. When court was called the next morning, the judge directed the jury to be ıe-assembled, and stated to them, after they had assembled, that he had told them the day before, if they found the defendant guilty, they were to fix the punishment, (again telling them what it was,) and asked them if they had agreed on the punishment the night before; and one of their number replied, that they had. The court then directed them to retire, and complete their verdict by adding the punishment. The jury then retired, and in a short time returned, having added to their verdict, as the pun-

ishment, imprisonment in the penitentiary for life. The court asked them, if that was the punishment agreed on by them the night before; to which they replied that it was, and that it was a mere oversight in not inserting the punishment the night before. All of which was against the defendant's objections, and to all of which action of the court the defendant excepted. On the next day, or the day after the jury had amended their verdict, as above stated, one of the defendant's counsel informed the presiding judge that the defendant was not in the court-room when the jury was directed to retire and amend their verdict, nor when they returned with their verdict; and asked that it might so appear in the bill of exceptions, and that he might have the benefit of an exception thereto."

The several rulings of the court to which, as above stated, exceptions were reserved, and the judgment of the court, are now assigned as error.

GEO. W. GAYLE, and W. C. WARD, for the prisoner.—
1. The court erred in refusing to have the special jurors, who failed to answer to their names, called at the door of the court-house, if not sent, for, when it was shown that they resided in the town. Such has been the uniform practice throughout the State, and it accords with the dictates of substantial justice. The law secures to the prisoner, in a capital case, the right to a copy of the *venire*, in order that he may make inquiry into the character of the men who are summoned to try him, and have a trial by a fair and impartial jury. This statutory and constitutional right, so important to him, and so carefully guarded, would be effectually thwarted, in many cases, if the court is allowed, through a desire to punish defaulting jurors, or from any other motive, to summon tales-men, and put them on the prisoner, without first using ordinary and customary means to procure the presence of the jurors specially summoned. Capital cases generally excite public interest, and draw the attendance of a large crowd; and it may often happen that the jurors are not able to force their way into the room, or wait to hear their names called at the door.

2. Pierce was a competent juror, on his own testimony;

Waller (a freedman) v. The State.

and even if he might have been challenged for cause by the prosecution, the court had no right to set him aside of its own motion. A cause of challenge may be waived by the party for whose benefit it is intended; and the failure to raise the objection is a waiver of it. In former days, it was said that the court was of counsel for the prisoner; but it was never heard, except in political prosecutions in England, that the court was of counsel for the prosecution, or could insist on objections which the prosecuting attorney might waive. That the court erred in setting aside the juror, see *State v. Williams,* 3 Stew. 454; *Murphy v. The State,* 37 Ala. 142; 5 Cushing, 295.

3. The court erred in refusing the charges asked. If the offense was committed under the circumstances detailed by the prosecutrix—in a public road, within the hearing, if not the presence of other persons, without any resistance or call for help on her part—the charge as to force was necessary and proper. Mere fear that force would be used, in such case, would not be sufficient to overcome the presumption of consent. As the act was not shown to have been committed forcibly, and against the will of the prosecutrix, proof of mere penetration was not sufficient; even if it be sufficient in any case, which is at least doubtful.—Hale's P. C. 628, note; Roscoe's Crim. Ev. 860.

4. In a capital case, the prisoner must be personally present in the court at every stage of the trial; and the record must affirmatively show his presence.—Wharton's Amer. Crim. Law, § 3197; *Dunn v. Commonwealth,* 6 Barr, 387; *Prine v. Commonwealth,* 6 Har. (Penn. St.) 103; *Eliza v. The State,* 39 Ala. 693; 1 Bishop's Crim. Pro. § 688, and authorities cited in note. The verdict cannot be rendered in his absence, and his counsel cannot waive his right to be present.—*Prine v. Commonwealth,* 6 Har. 103; 1 Bishop's Crim. Pro. § § 686, 827; *The State v. Hughes,* 2 Ala. 102; *The State v. Cross,* 27 Mis. (6 Jones,) 332; *The State v. Buckner,* 25 Mis. (4 Jones,) 167; 2 Hawk. 619; 1 Archb. Crim. Pl. 173; 1 Chitty's Criminal Law, 636.

5. After the jury had separated, the court had no power to call them together again, for the purpose of amending

their verdict.—3 Bouvier's Institutes, 501, § 3271; *Brister v. The State*, 26 Ala. 132.

6. As the verdict was insufficient to authorize a conviction and sentence, the prisoner ought to have been discharged; and he ought now to be discharged by this court. The case of *Cobia v. The State*, 16 Ala. 780, is at war with all the authorities on this point, and ought to be overruled. A verdict which does not authorize a conviction and sentence, is equivalent to an acquittal; and if the court erroneously renders judgment of conviction upon it, and drives the defendant to the necessity of a reversal on error or appeal, he ought not to be thereby prejudiced.

JOHN W. A. SANFORD, Attorney-General, *contra*.—1. The refusal of the court to charge that the force employed must have been such as to create a reasonable apprehension of death was not an error. Any array of force, sufficient to overpower the will, is enough to sustain a conviction on an indictment for rape.—2 Bish. Crim. Law, § 941, and authorities cited; 1 Russ. on Crimes, p. 676; *Lewis v. The State*, 35 Ala. 380.

2. Proof of penetration alone will justify conviction.—Penal Code, § 642; Roscoe's Crim. Ev. p. 807.

3. The fixed opinion of a juror against capital punishment rendered him incompetent to try the accused upon an indictment for an offense of which the punishment was death.—*Stalls v. The State*, 28 Ala. 25.

4. The delivery of the verdict to the clerk, during a recess of the court, is not such a receipt of it as will prevent the recall of the jury to amend a clerical error. Until the verdict is received by the court, and recorded, the jury have control over it, although it may be in the hands of the clerk. 5 J. J. Marsh. 675. As the jury still have control over the verdict, and the court can require them to amend their verdict, (*Cook v. The State*, 26 Ga. 595,) there was no error in having them recalled for this purpose.—*Mitchell v. The State*, 22 Ga. 211. For some purposes, the jury can be recalled, even after they have been dismissed by the court, (*Brister v. The State*, 26 Ala. 107,) *a fortiori*, they could be recalled when they had not been so discharged.

5. The law requires the jury to render their verdict in the presence of the accused, so that he may poll them; but he can waive any right secured to him by law.—1 Bishop Crim. Pro. § 422. In this case, he waived this right, when he consented that the clerk might receive the verdict during the recess of the court. The mere correction of a clerical error, in his absence, could not injure him.

BYRD, J.—The assignments of error will be disposed of in the order in which they appear upon the record.

1. There is no law, or rule of practice, in this State, which requires that the jurors, summoned to try a person charged with the commission of a felony, shall be called at the door of the court-house, or be sent for, when their names are drawn. The court did not err in its ruling on this question.

2. The juror Pierce, according to the answers given to the questions propounded to him, was properly discharged by the court.—Penal Code, § 630. The more regular course, perhaps, is, for the State's attorney to challenge for cause in such a case; yet, if the court discharges the juror, it is not an error of which the prisoner has any legal right to complain. The court should see that incompetent jurors are not put upon the prisoner or the State, and that a fair and impartial trial is had. But it is not the duty of the court, *ex mero motu*, to set aside such a juror.—*Murphy v. The State*, 37 Ala. 142. To act, or to decline to act, in such a case *as this*, is not error.

3. The court properly refused to give the first charge asked by the counsel for the appellant. It would be singular if the law should hold a man, who, by force or threats, had sexual intercouse with a female, not guilty of rape, because the force or threats, by which the act was accomplished, did not "create a reasonable apprehension of death" on her mind. Such a proposition cannot be sustained upon any code of ethics or law of any people, heathen or christian. The question is, did the prisoner have such intercourse, against the *consent* of the victim of his brutish passions, and by force. If he did, then he is guilty.—*Lewis v. The State*, 35 Ala. 380; *Murphy v. The*

*State,* 6 Ala. 770. If the rule prevails as contended for by the counsel for the prisoner, it would leave the guilt of the accused to be tested by the reasonableness of the apprehension of the female, as to the force employed or threatened being such as might produce death, if she did not yield the use of her person to the wicked purposes of her worst enemy.

4. The other charge asked, was also correctly refused. Under section 642 of the Penal Code, "actual penetration" is sufficient, when the act is shown to have been committed forcibly, and against the consent of the person on whom the offense was committed; even if such penetration, under such circumstances, was not sufficient at common law. Lord Hale held that penetration was sufficient.—1 Hale's P. C. 628. Lord Coke was of a contrary opinion, and held that the "two proofs" must be made.—12 Co. 36, 37. But, in Scotland, and in every country in Europe, it has been held that penetration was sufficient.—2 Bishop on Criminal Law, § 1085 (944).

Upon reason and principle, it would seem that there ought to be no doubt of the correctness of this position; and it is strange that, in any christian or civilized country, a different opinion should ever have obtained any favor or countenance.—1 East's P. C. 436, 440; *The State v. Sullivan,* Addison, 143.

The following authorities fully sustain the position, that under section 642 of the Penal Code, penetration alone is sufficient.—*Rex v. Bussen,* 1 East's P. C. 438; *Rex v. Jennings,* 4 Car. & P. 249; 1 Lewin, C. C. 93; *Rex v. Cox,* 5 C. & P. 297; 1 Moody, C. C. R. 337; *Rex v. Beekspear,* 1 Moody, C. C. R. 342; *Brooks' case,* 2 Lewin, C. C. 267: *Regina v. Allen,* 9 Car. & P. 31.

Prior to the year 1776, the weight of English authorities was in favor of the opinion of Sir Matthew Hale, as above stated, (1 East's Cr. Law, 439,) and we prefer to follow them, as they were prior to the revolution.

5. The other assignments of error may be disposed of together, so far as it is necessary to notice them in this opinion. It was erroneous for the court to allow the jury to return their verdict to the clerk, under the facts of this

case. The counsel had no authority to assent thereto, or to waive the right of a prisoner, charged with a felony, to be present when the jury delivered their verdict to the court. *The State v. Hughes*, 2 Ala. 102 ; 2 Hawk. ch. 47 ; 2 Lead. Crim. Cases, 452 ; *Nomaque v. The People*, 1 Breese, 109 ; 1 Chitty's Crim. Law, 626 ; 1 Term R. 434 ; *Prine v. Commonwealth*, 6 Har. (Pa.) 103 ; 1 Bish. Cr. Pro. § 688 ; *State v. Buckner*, 25 Mis. 168 ; *Eliza v. The State*, 39 Ala. 693.

It was also improper to allow the jury to amend their verdict, under the circumstances shown by the record.— *Vide* authorities cited *supra; Brister v. The State*, 26 Ala. 108. The case last cited does not militate against the views we have taken of this case. And whenever it is allowable for a jury to make an amendment, the record should show affirmatively, in a case of felony, that the prisoner was present in court when the instruction was given to the jury to do so, and also when they returned with the verdict as corrected, and delivered it to the court.— *Vide* authorities, *supra.*

6. The counsel for the prisoner insists that this court ought to order the discharge of the prisoner from custody, on the ground that, upon the verdict as originally returned into court, no sentence could have been pronounced, and that he was entitled to judgment of acquittal thereon. We can not assent to such a proposition.—See *The People v. Perkins*, 1 Wendell, 91 ; *The State v. Hughes, supra; The State v. Battle*, 7 Ala. 259 ; *State v. Williams*, 3 Stew. 454 ; *Cobia v. The State*, 16 Ala. 781 ; *The State v. Redman, infra ; Turner v. The State*, at the last term.

The proper distinction, in all such cases, seems to be, that if the jury, by their verdict, ascertain and pronounce the prisoner guilty of the offense charged, then, although the verdict is otherwise informal or imperfect, and therefore reversible, the prisoner is not entitled to be discharged upon a reversal, but may be tried again. If the verdict fails to fix the guilt of the prisoner, and the jury should be discharged without his consent, and no sentence could be legally pronounced on the verdict, then he *might* be entitled to a judgment of acquittal thereon. There are cases in which a court may set aside a verdict, and order a *venire de*

21

*novo;* but it is unnecessary for us to decide that the court could or could not have taken such a course in this case.

Upon the above cited adjudications, we hold, that the judgment is reversible, and the prisoner can be again tried on the same indictment.—*The State v. Redman,* 17 Iowa R. 330. The case of *McCauley v. The State* (26 Ala. 126) does not conflict with these views, nor overrule the cases of *Hughes v. The State,* and *Cobia v. The State, supra;* nor has the case of *Battle v. The State* ever been questioned by this court, though it has been at the bar, and there is no necessity which requires a review of it in this case.

The judgment of the court below is reversed, and the prisoner will remain in the custody of the sheriff until discharged by due course of law.