## GRAHAM (ALIAS SMITH) *vs.* THE STATE.

[INDICTMENT FOR ARSON.]

1. *Arson in second degree; constituents of offense.*—To constitute the offense of arson in the second degree, by willfully setting fire to or burning "any cotton-house," &c., "which, with the property therein contained, is of the value of five hundred dollars or more," (Penal Code, § 152; Revised Code, § 3698,) it is not sufficient that the fire is applied or communicated to the property in the house: the house itself, or some part thereof, must be burned, within the common-law meaning of the word *burn.*

2. *Arson; proof of ownership of house; variance.*—Where the house alleged to have been burned is described in the indictment as the property of *Ely Sears,* while the evidence adduced on the trial shows that it belonged to *E. T. Sears,* neither the jury, nor the primary court, nor the appellate court, can presume the identity of the two names, without some proof the fact.

3. *Personal presence of prisoner in court when sentence is pronounced.*—To
sustain a judgment and sentence on conviction for a felony, the
record must affirmatively show that the prisoner was personally
present in court when he was tried, and when sentence was pro-
nounced against him.

FROM the Circuit Court of Autauga.

Tried before the Hon. JOHN MOORE.

THE indictment in this case, which was returned into
court on the 3d April, 1867, contained but a single count,
which charged that the prisoner, Ira Graham, *alias dictus* Ira
Smith, "willfully set fire to, or burned, a cotton-house of
Ely Sears, which, with the property therein contained,
to-wit, four bales of cotton, was of the value of more than
five hundred dollars; against the peace and dignity," &c.
The trial was had, at the April term, 1867, on issue joined
on the plea of not guilty, when the defendant reserved a
bill of exceptions, which, after stating that the solicitor
read the indictment to the jury, and that the defendant
pleaded not guilty, proceeded as follows:

" The State then introduced as a witness one E. T. Sears,
who testified, that on the 20th day of March, 1867, he had
near his dwelling-house, and about twelve or fifteen feet
therefrom, a building constructed as follows: Four posts
set in the ground, with a roof over the same made of
rough edge and inch plank; one side of which was closed
in by plank nailed to the posts; and the other side was
closed in by a rail fence; one end being enclosed by the
railing around the yard, and the other end, which was next
to the dwelling-house, being left open.   Said Sears testified,
that he had four bales of cotton stored therein; that said
building, with the cotton therein, was worth more than
five hundred dollars; that said bales of cotton were lying
on their sides on some timbers, put there for that purpose;
that on the night of the 20th March last, between the
hours of eight and nine o'clock, one of said bales was dis-
covered to be on fire; that the fire was extinguished after
burning a small hole in the end of the bale, and before it
had communicated to any part of the building.   The evi-
dence further showed, that this was in Autauga county;

and tended to show that the defendant set it on fire, and that it was the property of E. T. Sears.

" The court charged the jury, that if they were satisfied, beyond a reasonable doubt, that the offense was committed in Autauga county, at the time stated by the witness, and that the building, with the property therein, was worth five hundred dollars or more, and that it was the property of E. T. Sears, and that the defendant willfully set fire to the cotton, and that the destruction of the cotton by the fire would necessarily destroy the building, then the defendant would be guilty, though no part of the building itself was burned.

" The defendant excepted to this charge, and then requested the court to instruct the jury—

" 1. That to constitute the crime of arson, as charged in this case, it is necessary for the State to prove that the cotton-house, or shed in which the cotton was stored, or some part thereof, was set on fire or burned.

" 2. That if the jury believed, from the evidence, that the building containing the cotton was not set on fire or burned, nor any part thereof, but only the cotton contained in the building, then they could not convict the defendant of arson.

" 3. That if the jury believed, from the evidence, that only the materials or cotton bales in the house were set on fire or burned, and not the house or shed itself, then they must find the defendant not guilty.

" The court refused each of these charges, and the defendant excepted to their refusal."

C. S. G. DOSTER, for the prisoner, cited Wharton's Amer. Crim. Law, 534 ; 3 Greenl. Ev. 54 ; 2 East's P. C. 1020, 1038 ; Roscoe's Crim. Ev. 274 ; 3 Ired. Law, 574.

JOHN W. A. SANFORD, Attorney-General, contra.

BYRD, J.—This indictment is founded on section 152 of the Penal Code, so much of which as is necessary for the decision of the questions raised by the charge given and the charges refused by the court, reads as follows : "Any person who willfully sets fire to, or burns, any church,

meeting-house, court-house, town-house, college, academy, jail, or other building erected for public use; or any banking-house, ware-house, *cotton-house*, gin-house, store, manufactory, or mill, which, with the property therein contained, is of the value of five hundred dollars or more," &c., "is guilty of arson in the second degree, and must, on conviction, be punished by imprisonment in the penitentiary, or hard labor for the county, for not less than two, nor more than ten years."

It appears from the record that E. T. Sears testified that, in March, 1867, he had near his dwelling-house, about twelve or fifteen feet therefrom, a *building* constructed as follows: Four posts set in the ground, with a roof over the same made of rough-edge and inch planks; one side of which was closed in by plank nailed to the posts, and the other side was closed in by a rail fence; and one end was inclosed by the paling around the yard, and the other end, which was next to the dwelling-house, was left open. Said Sears further testified, "that he had four bales of cotton stored therein; that said building, with the cotton therein, *was* worth more than five hundred dollars; that said bales were lying on their sides on some timbers; that in March, 1867, between eight and nine o'clock at night, one of the bales was discovered to be on fire; that it was extinguished after burning a small hole in the end of the bale, and before it communicated to any part of the building. The evidence tended to show that the defendant set it on fire, and that it was the property of E. T. Sears."

The bill of exceptions does not purport to set out all the evidence introduced on the trial; but we will proceed to consider the charges refused by the court with reference to the evidence set out. For, upon that alone, if the jury believed it, they would have been authorized under the charges, if they had been given, to find the defendant not guilty as charged in the indictment.

The legal questions arising on this indictment and the evidence will be fully presented by reading so much of the above recited section of the Penal Code, *as* follows: "Any person who willfully *sets fire to*, or *burns*, any cotton-house, which, with the property therein contained, is of the value

Graham (alias Smith) v. The State.

of five hundred dollars or more,     *     *     *     *     *     *     *     *     is guilty of arson in the second degree." Among other questions arising under this provision of the law and evidence in this cause, and the important one to the defendant, is, whether a person who sets fire to a bale of cotton, within a house specified in the law, the fire being put out without burning any part of the house, is guilty, under the statute, of arson in the second degree.

In our opinion, the statute levels its denunciation at the act of setting fire to or burning the buildings named, and not at the contents thereof. The latter, though mentioned in the statute, only affect the degree of the offense of arson, whenever their value, and the value of the building, amount to five hundred dollars or more. If, therefore, a house described in the statute, which is not worth five hundred dollars, but with the contents is worth that sum, is burnt, and the contents are all saved; yet the defendant would be guilty of arson in the second degree, if all the other constituents of the offense existed. On the other hand, if the goods were all burned, whether of the value of five hundred dollars or not, and the house was not *burned* within the meaning attached to this word by the common law, the defendant would not be guilty. It is true it may be difficult for such a thing to take place, but it is not beyond the range of probability. It is the house or building, not the goods within it, which is the subject of the vindicatory provision of the statute.

This view is enforced by the consideration, that the statute declares that the offender under it "is guilty of arson in the second degree." The word *arson* has a clear and well-defined meaning at common law, which lies at the basis of our civil and criminal jurisprudence; and it is to be presumed that the legislature employed the word in its legal signification. Mr. Bishop says, "Arson is an offense against the security of the habitation, rather than the property."—Vol. 2, § 39 (24).

The question, and the main one in this cause, is, whether the setting fire to the cotton within the building is a setting fire to the building within the meaning of the statute. There can be no doubt, that, if the building had been set on fire

from the burning of the cotton, then the defendant, if the other ingredients of the offense existed, would be guilty of arson in the second degree. Arson, at common law, is usually defined, "the willful and malicious burning of the house or out-house of another man"; or, as expressed by another author, "the malicious burning of another's house." The words "house", and "burning", have a technical meaning at common law. It is not necessary for us to notice the former, but it lies in our way to ascertain the meaning of the latter. In saying this, we do not intend to intimate that the "building" described by the witness in this case was a "cotton-house", within the meaning of the statute. If all the evidence introduced on the trial had been set out, it might have devolved on us to pass on that point.

Under an indictment against a person for arson at common law, it was sufficient to prove that any part of the house was burnt; and if the other constituents of the offense were proved, the offender could be convicted. The burning of any part, however small, completes the offense, the same as of the whole. If the portion of the house which is combustible is blackened by fire, but its fibres or texture is not wasted or destroyed by the fire, the offense is not complete.—4 Black. Com. 222 ; Amer. Crim. Law, p. 710, §§ 1659–62; 2 Russell on Crimes, 548 ; Roscoe's Criminal Evidence, 270; 1 Bishop's Criminal Law, § 325 (188).

It has been held, that the words "set fire to" are substantially synonymous with the word "burn", when used with reference to a house. Ordinarily, and in common acceptation, the phrase "set fire to" would be understood to convey a different meaning from the word "burn", when applied to a house, or anything else. A person might, in one sense, set fire to a house, or a powder magazine, without burning either; for a blaze would set one on fire and burn it, whilst it might not affect the other, although in contact.

Again, it may be argued with some force, that the legislature intended to convey a different idea by using the terms in the connection in which they are placed in the statute—"sets fire to, or burns"—for, if they are synonymical, why were both used ? that the word "or" implies dis-

tinction, difference, &c. To this it may be replied, that this form of expression is used to convey a variety of meanings besides the one designated; as, similarity, opposition, explanation, &c. It is allowable to say similitude or resemblance, vice or virtue, to destroy by fire or by burning with fire, &c. The conjunction used does not necessarily convey an idea of dissimilitude, distinction, resemblance, or identity. To set fire to a house mentioned in the statute is declared to be arson in the second degree; which is persuasive to show that there must be such a burning of the house as was necessary to complete the offense at common law. The statute does not read "set fire to, with intent to burn"; nor "set fire to the contents of the house, with intent to burn the house." If it read so, then it is clear that the sentence would have a different meaning from the word "burn."

Mr. Bishop says, (1 Crim. Law, § 326, (189,) that the words "set fire to" have not been minutely difined, but they mean substantially the same as burn. "There need not be a flame visible, yet there must be some consumption of the wood." He seems to think that the case of *The State v. Dennin* (32 Vermont, 158) holds a different doctrine. I hardly think so. The statute in that case uses the words "*set fire*, with intent to burn"; which seems to me to indicate, that the legislature intended to punish the offender, not for burning the house, but for *setting fire* with intent to burn. He might set fire, not "*to*" the house, but to *some thing else*, with intent to burn a particular house, and could be found guilty under the statute of Vermont. And in that case, the court, admitting the English doctrine on this question, distinguish that case from the English cases, by the difference in the language, and laying stress on the words "with intent to burn." However this may be, the English doctrine upon statutes similar to section 152 of our Penal Code, sustains the extract taken from 1 Bishop's Criminal Law, *supra*.

The statute of 9th Geo. I, c. 22, otherwise known as the "*Waltham Black Act*," uses the words "set fire to any house, barn, or out-house," &c.; which was extended by statute 9th Geo. III, c. 29, to the "malicious and willful burning or

setting fire to all kinds of mills." The statute of 1st Vic. c. 69 uses the words, "set fire to." Our statute, in its present form, was passed subsequently to the English statutes, and to the decisions made thereon, hereafter cited; and it is to be presumed that the legislature adopted the language used in the statute, with reference to the adjudications made by the British courts upon the statutes referred to above.

The case of *Sarah Taylor*, (1 Leach, 58,) was decided in 1759, by Baron Legge, who, having doubts, submitted two questions to the consideration of the judges. It appears that the defendant was indicted for maliciously setting fire to a certain *outhouse*, commonly called a paper-mill. The evidence showed that the defendant had set fire to a large quantity of paper, which was drying in a loft annexed and belonging to the mill, and that no part of the mill was consumed. One of the questions submitted was, whether setting fire to paper in a drying-loft belonging to a mill, can be considered as setting fire to the mill? The indictment was founded on the " Black Act"; and in answer to the question, the judges of the court of king's bench all agreed, that the prisoner not having set fire to any part of the mill, and no part of the mill having been consumed, the defendant's case was not within the statute upon which she was indicted. The other question submitted was, whether a mill could be considered an *out-house* within the meaning of the 9th Geo. I, c. 22; but the court gave no opinion upon this question, which probably was the cause of the enactment of the 9th Geo. III, c. 29.

In *Breeme's case*, (1 Leach, C. C. 261,) the words used in the indictment were, "did set on fire, *and* burn"; and the court held, that the statute of Geo. I, c. 22, "did not vary the nature of the offense as it stood at common law."

In *Stallion's case*, (1 Moody, 398,) the defendant was indicted for " setting fire to an out-house"; and another count charged him with "setting fire to a coach-house"; and another charged him with setting fire to a building and erection used in carrying on the trade of poulterer. The evidence showed that " the building was formed by six upright posts, nearly seven feet apart, three in the front,

and three at the back"; that "these posts supported the roof; that there were pieces of wood laid from one side to the other; straw was put upon these pieces of wood, laid wide at the bottom, and drawn up to a ridge at the top. The straw was packed up as close as it could be packed; and the pieces of wood and straw *made the roof*." There was evidence describing the position of the house with reference to the dwelling, and one witness said, "that he should call the building in question an out-house." It was proved, that "smoke was seen to issue from the bottom of the roof"; that "there was a good deal of smoke in the straw; some handfuls of straw were pulled out; there were sparks in the straw when upon the ground; but no sparks were seen in the straw upon the roof;·no flame was seen; a ball of linen was pulled out of the roof with the straw; * * the ball was burnt right through on one side; three or four pails of water were brought, and the fire on the roof was extinguished by throwing some of the water upon it;" * * * "several handfuls of straw were taken out of the roof, and there was burnt straw in some of these handfuls; and on examining the straw lying on the ground down by the building, there were some burnt ashes; and the ends of some of the straw were burnt," and some "had been reduced to ashes"; but "no part of the wood, either in the pieces on which the straw was laid, or in the posts of the building, was burnt." The cause was tried before Littledale, J. The defendant was convicted, and the judges, having passed sentence, thought it right to take the opinion of the judges of the king's bench, "whether the conviction were right." The opinions of the judges were requested on three questions, two of which were—1st, whether, in case the building were an out-house, the straw (as above described) was a part of the building; and, 2d, whether this was a setting on fire. The judges gave no opinion, further than to hold that the conviction was right. In this case it is apparent, that the straw was rightly held to be a part of the building; and a part of it having been consumed by fire, this ingredient of the crime was made out by the proof. The negative weight of this case, as authority in point, is apparent. It shows how careful th

English judges were in construing the statutes referred to herein.

In the case of *Regina v. Parker*, (9 Car. & Payne, 45,) the defendant "was indicted for setting fire to the house of Edward Stammers." The evidence showed, "that the floor near the hearth had been scorched, and it was charred in a trifling way; it had been at a red heat, but not in a blaze." The witness, in answer to further questions, said, "that he had not examined the floor to see how deeply the charring went in; neither could he at all form a judgment as to how long it been done." On this evidence, Bosanquet, J., said to the jury, "we think this evidence is much too slight, and that you ought to require better proof that the house was on fire at the time in question."

In the case of *Maria Russel*, (Car. & Mars. 541,) the prisoner was indicted for "maliciously setting fire to the house of Ann Wright." The evidence was, in substance, that a small faggot was found lighted and burning on the boarded floor of the kitchen, about four feet from the hearth-stone. A part of the boards of the floor was scorched black, but not burnt. The faggot was nearly consumed, but no part of the wood of the floor was consumed. On this evidence, Cresswell, J., said, "I have conferred with my brother Patteson, and he concurs with me in thinking, that as the wood of the floor was scorched, but no part of it consumed, the present indictment cannot be supported." And he further said, that it was not essential that the wood should be in a blaze.

It is unnecessary for us to notice thus particularly any further English cases bearing on the questions under discussion; and we will pass to a brief notice of a few American cases, after citing the following authors, who sustain and refer to the decisions above referred to, and others in approval of the same doctrine: 2 East's Criminal Law, 1020; 1 Hawk. P. C. p. 296, § 16; 1 Hale's P. C. 568, note 4; 2 Russell's Crim. Law, 555; Roscoe's Criminal Evidence, 270–4; 3 Archb. Cr. Pl. 493; Wharton's Amer. Cr. Law, 1658, *et seq.*

In *The Commonwealth v. Francis*, (Thach. Cr. Cases, 240,) a boat was set fire to within a shop or building; but the fire

did not extend to the building. The court say, that "maliciously to set fire to the building of another, is against the statute"; but, unless some permanent part of the house be burned, it did not come under the statute; though setting fire to an unfinished boat in a shop, with intent to burn the building, is a misdemeanor at common law. Such is our understanding of the points decided in that case, touching this question.

In the case of *Van Schaak*, (16 Mass. 105,) the words of the statute upon which the indictment was framed, were "willfully and maliciously set fire to the dwelling-house of another, or" &c. The evidence showed, that a board, a part of the exterior covering, was burnt. The court say, "The statute has left the burning to be defined by the common law; and by that, if any part of the dwelling-house, however small, be consumed, the offense is complete; and so it is with the statute." This case is only cited to show that the court, *in effect*, held that the proof necessary to sustain a conviction at common law, is necessary to sustain one under the statute. Such, we admit, is not the only construction to be given the decision.

The case of *The State v. Tennery*, (19 Ill. 436,) is a decision bearing indirectly on the question; and the case of *The State v. Dennin, (supra,)* bears more directly on it. In *Taylor's case*, (45 N. H. 322,) the court say, "The words 'set fire to', and 'burn', are generally understood as equivalent; and it is evidently used synonymously in our statutes."

The only case I have found adverse to the above authorities, is the case of *Howell v. Commonwealth*, (5 Grat. 664.) The learned judge (Lomax) makes an argument in that case, to show that the words "set fire to", and "burn", are not synonyms; and criticizes Mr. East's remark, that "he was not aware of any decision which had put a larger construction on those words (set fire to) than prevails by the rules of the common law; and the contrary opinion may be collected from what is said in *Spalding's case*, and *Breeme's case*, and in the case of *Sarah Taylor*", (2 East's C. L. 1020,) by saying, that "upon an attentive inspection of the authorities which he has referred to, it will be dis-

covered that there is nothing in these cases which decides that these expressions (to set fire to and burn) are identical in their meaning." With the highest deference to the opinion of Justice Lomax, it does appear to us, upon a careful reading of the cases of *Breeme* and *Sarah Taylor*, that they fully sustain Mr. East, unless the learned justice gives a more technical meaning to the word "identical", than we do. The cases referred to by him, to sustain the view he takes, are not in point; nor do they, with the weight of the very able and forcible reasoning of his opinion in that case, break down the authority and wisdom of the English adjudications upon this question, sustained as they are by the most learned jurists of that and this country. I have thought it proper to review the authorities, as has been done at some length, on account of the serious assault that has been made on them by the distinguished jurist named.

Upon the foregoing authorities, we come to the conclusion, that the words "set fire to," used in our statute, are equivalent to the word "burn" as defined by the common law; and when they refer to a house, that they mean that some portion of the same, however small, must be consumed, or destroyed by fire, in order to complete the offense of arson under section 152 of the Penal Code; and, therefore, the court should have given the first two charges asked by the prisoner.

Although the defendant can not be found guilty as charged in the indictment, if the facts on another trial should be the same as shown in the record; yet, under section 647 of the Penal Code, he *may* be found guilty of an attempt to commit arson, if the house is a cotton-house, or an outhouse, within the meaning of that term by the common law; and be punished as provided by section 207 of that Code.—*Henry v. The State*, 33 Ala. 400, which is re-affirmed in *The State v. Lee & Norton*, 38 Ala. 217.

We yield any opinion we may have entertained of the interpretation of the words used in the statute, to the weight and wisdom of the enlightened judicial exposition given to them, and acquiesced in for more than a century.

2. The indictment avers, that the cotton-house belonged

to *"Ely Sears."* The evidence shows that it belonged to *E. T. Sears.* The charge of the court instructs the jury, that the defendant may be found guilty, if the house was the property of E. T. Sears, and the offense were proved. We can not presume that *Ely* Sears and *E. T.* Sears are the same persons ; nor could the jury, or the court below, without some proof of the fact, if it is one.

3. The judgment-entry in this case does not affirmatively show that the defendant was personally present at the time sentence was pronounced or the trial took place, as required by law ; and under the rule laid down in the case of *Eliza v. The State*, (39 Ala. 693,) and other cases decided by this court, a reversal would result.

This opinion disposes of all the material questions which are likely to arise on another trial ; and it but remains for the court to say, that the judgment of the court below is reversed, and the cause remanded for further proceedings, and that the prisoner remain in the custody of the sheriff until discharged by due course of law. Let a judgment-entry be made accordingly.