## THE STATE v. HUGHES.

1. The 10 sec. of the 1 Art. of the Constitution, guaranties to one indicted for a crime, the right to be present in Court, that he may discuss questions of law and fact, which may arise either preparatory to, or pending the trial, and that he may point out objections to the action of the jury, or other proceedings in the cause.

2. One tried for a crime, has a right to be present when the jury return their verdict against him, that he may examine them by the poll, to ascertain if they assent to his conviction.

3. The reversal of a judgment of the Circuit Court, in a criminal case, upon points referred as novel and difficult, does not make it necessary that the accused should be indicted anew, when the cause is sent back for another trial, unless the indictment was adjudged insufficient.

4. The statute of 1826, which provides for the holding of a special term, "devoted exclusively to the civil and chancery docket," does not repeal the acts of 1807 and 1819, (as consolidated,) which authorise a special session of a Circuit Court for the trial of a criminal cause.

5. Where a verdict of "guilty," in a case punishable capitally, was received by the Court, in the absence of the accused—held, that although the Court erred in thus receiving the verdict, yet the accused was not entitled to his discharge, but should be tried *de novo*·

THE prisoner being indicted in the Circuit Court of Dallas, for the crime of murder, pleaded, 1. Not Guilty. 2. *Autre fois acquit ;* and, being put upon his trial, a verdict of "guilty in manner and form as charged in the indictment," was returned by the jury ; whereupon judgment was, in due form, rendered against him.

The State v. Hughes.

After the jury had returned their verdict, the prisoner moved in arrest of judgment, and assigned sundry causes. A copy of which, together with a decision thereupon, and a statement of facts by the Court, is as follows:

" Came Gayle & Saffold, the counsel of the prisoner, Hughes, and moved in arrest of judgment on the following grounds, to wit:

1st. The verdict was given in the absence of the prisoner.

2d. The Court erred in charging the jury, that an acquittal could only be, by a jury, under defendant's plea of *autre fois acquit*.

3d. That the reversal, by the Supreme Court, was an acquittal of Hughes on the old indictment, and he could not be tried on it again.

4th. That the appointment of the special court for the trial of Hughes, was without the authority of law, being without his consent or application.

And the matter involved in said motion, being considered by the Court, the motion is overruled. The facts were, that the prisoner was not in Court when the verdict was delivered, but his counsel were, and no request made that the prisoner should be.

" The proof submitted under the plea of *autre fois acquit*, was the certificate of reversal in the Supreme Court, and a copy of the opinion of the Court in the case—this was all the proof. Upon this state of proof the Court charged the jury, that it was insufficient to sustain the plea of *autre fois acquit*. But because the points raised under the motion in arrest of judgment are deemed novel and difficult, the same are reserved for the consideration of the Supreme Court, whether the motion should have been overruled or not."

ATTORNEY GENERAL, for the State.
G. W. GAYLE, for the prisoner.

COLLIER, C. J.—1. The 10 section of 1 Article of the Constitution declares, that " In all criminal prosecutions the accused has a right to be heard by himself and counsel," &c. Again, " and in all prosecutions by indictment or information, a spee-

dy public trial, by an impartial jury of the county, or district, in which the offence shall have been committed; he shall not be compelled to give evidence against himself, nor shall he be deprived of his life, liberty or property, but by due course of law."

This constitutional provision guaranties to the accused the right, not only to discuss questions of law and fact, which may arise, either preparatory to, or pending the trial before the jury, but to point out and argue objections to the action of the jury, or other proceedings in the cause. That he may avail himself of this privilege, the opportunity must be afforded him of coming into Court and being heard, before he is foreclosed of any legal exception. If a different course is pursued, and a sentence pronounced against him extending to life, liberty or property, he cannot be said to have been convicted "by due course of law."

But we need not consider the first cause moved in arrest of judgment, in reference to the provision of our Constitution, for sor far as it concerns this question, the constitutional declaration is affirmatory of the common law. Mr. Justice Blackstone, in treating of a trial in a criminal case, says, "When the evidence on both sides is closed, and indeed, when any evidence hath been given, the jury cannot be discharged, (unless in cases of evident necessity,) till they have given in their verdict; but are to consider of it, deliver it in, with the same forms as upon civil causes; only they cannot, in a criminal case, which touches life or member, give a *privy* verdict."

The precise question we are considering, came before the Supreme Court of New York, in The People v. Perkins, 1 Wend. Rep. 91. In that case the prisoner had been indicted for a forgery. When the cause was submitted to a jury he was committed to jail, and on the coming in of the jury, their verdict was received without the prisoner being brought into court. On being brought up to receive sentence, he objected that he was not present when the verdict was received; and the Court of Sessions, before which he had been tried, suspended judgment, until the advice of the Supreme Court was obtained.

The State v. Hughes.

The Court said that the verdict was irregular, and, though many of the ancient forms on trials are now dispensed with, the prisoner should have been present on receiving the verdict, that he might have availed himself of the right of polling the jury. And a new trial was consequently granted.

In that case it was held to be the clear right of the prisoner to poll the jury; while in the other, it is considered as depending for its exercise upon the discretion of the Court. [Commonwealth v. Roby, 12 Pick. Rep. 496, 513; Fellow's case, 5 Greenl. Rep. 333.] But it is exercised, we believe, in all criminal courts in the United States, whether as an acknowledged right or granted *ex gratia curiæ.* [Fox v. Smith, 3 Cow. Re. 23; Goodwin's trial, 18 John. Rep. 188; The State v. Harden, 1 Bailey's Rep. 3.] Lord Hale says, [2 Hale's P. C. 299,] that when the jury respond to the general inquiry made of them, by saying they have agreed, the Court may examine them by the *poll;* and such has been understood to be the law in this State, since the organization of the government. ·This brings us to the conclusion, that, by receiving the verdict of the jury, in the absence of the prisoner, he has been deprived of a legal right; and its reception was consequently irregular.

2, 3.—The reversal of the conviction of the prisoner, at a previous term of this Court, was not intended to operate so as to discharge him from a further trial for the same offence. The cause was then remanded for that purpose, and it is so said in the opinion of the Court. There was no necessity for preferring a new indictment; the one already found was unaffected by the judgment of reversal. The insertion of the words " unless in the interim he should be discharged by due course of law," after the direction that the cause be remanded for a new trial, was dictated rather by a conformity to form than any thing else; for it is difficult to conceive how the prisoner could be discharged, otherwise than by an executive pardon, until tried.

4.—By the statutes of 1807 and 1819, as consolidated, it is enacted, that "A special session of any Circuit Court may be held, by order of the Judge or Judges of the same, whenever it may be necessary, for the trial of criminal causes; and the said Judges, at their discretion shall have power, on the ap-

12

plication of any person charged with a criminal offence, to hold a special session, for the trial of such person; and the said Judges shall direct the sheriff of the county in which such special session shall be holden, to return thereto twenty-four persons, properly qualified, to serve as jurors, who shall be selected in the manner now prescribed by law, in such cases—any, or all, of whom failing to attend, or being challenged, or set aside, a jury of bystanders shall be empannelled for the trial of the cause." [Aik. Dig. s. 14, p. 242.]

The prisoner was tried at a special term of the Circuit Court of Dallas, holden for the trial of criminal causes. At the preceding regular term, the presiding judge stated upon the record his entire inability, in consequence of indisposition, to proceed " with the disposition of the business on the several dockets of the Court," and appointed a time when a special term should be holden, and made the appropriate order in regard to the drawing and summoning a jury.

It was argued for the prisoner, that the Court, at which he was tried, was irregular and unauthorised, because the act of 1826 provides, that when " the Circuit Courts should not be able to dispose of all the business depending in any of the said Courts, at their regular terms, it shall be the duty of the judge of the Circuit," &c. to hold a special term, " devoted exclusively to the civil and chancery docket." [Aik. Dig. s. 16, p. 242.] This statute, it is insisted, repeals the previous enactment in regard to special terms for the trial of criminal causes. We think this argument cannot be maintained. The statutes are entirely consistent with each other—they have different objects in view, and may both operate together.

Having attained the conclusion that the judgment of the Circuit Court must be reversed, we are now to inquire what further order shall be made in the cause.

In the case of the People v. Perkins, 1 Wend. Rep. 91, the prisoner was ordered to abide a new trial—that case, we have seen, was in all respects like the present.

In Ned v. The State, 7 Porter's Rep. 187, it appeared that the jury, to which the cause of the prisoner was submitted, were discharged, by an order of Court, without a sufficient reason therefor, from rendering their verdict. That case, it is

insisted, is authority to shew that the prisoner, in the present case, should be discharged. The cases, it is conceived, are not analogous. In Ned v. The State, the Court does an act in despite of the prisoner's rights, which might have operated to his prejudice—in the case before us, the Court was merely passive, and under a misapprehension of law, suffered an error to intervene. There, the prisoner was denied the right of trial, by a jury of his own selection—here he was thus tried, but the jury have irregularly returned their verdict.

Suppose the prisoner had been in Court when the verdict of the jury was received, and had then proposed to poll them, and his request been refused, would he have been entitled to a discharge? The refusal, we have seen, would have been an error, yet we are of opinion that it would have been a mere irregularity, which would not have put an end to the prosecution. The objection is not that the prisoner was not allowed, upon request, to poll the jury, but that not being in Court when the verdict was returned, he had no opportunity of making such a request. He cannot certainly occupy a more favorable position than he would do, if the right had been expressly denied.

The judgment of the Circuit Court is reversed, the cause remanded, and the prisoner directed to remain in custody, to await a trial *de novo*, unless, in the *interim*, he shall be discharged by due course of law.