# · Whitsett, *et al.* v. Belue, *et al.*

## *Probate of Will.*

### (Decided Jan. 31, 1911.  54 South. 677.)

1. *Jury; Formation; Number.*—The full number required by section 6198, Code 1907, need not be present before the jury to try the will contest is organized; where thirteen were in attendance, it was not error to proceed with the organization.

2. *Same; Order of Challenge; Discretion.*—In organizing a jury in a will contest, the order in which challenges shall be made is within the sound discretion of the trial court, the exercise of which will not be reviewed unless abused.

3. *Same.*—In a will contest the court empanelled a jury of twelve men, and the proponent challenged one of them, whereupon the thirteenth was called and accepted by the proponent; proponent then moves to require the contestant to pass upon the thirteenth man called before he took his seat in the jury box, which motion was overruled. Proponents then challenged another number drawn in the same manner, and another was drawn, and declared satisfactory to proponent when the same motion was made and overruled as to him, and this process was continued until the jury was selected. Held, not an abuse of the discretion of the trial judge.

4. *Charge of Court; Alternative Proposition.*—Where a charge contains several distinct alternative propositions, each alternative must be correct in order to constitute error in its refusal.

5. *Same; Invading Province of Jury.*—An instruction asserting that it is common knowledge that the constant use of morphine subdues the will, and hence, the jury could consider whether testatrix was under the influence of morphine when she made the will, invaded the province of the jury, and was erroneous

6. *Same; Assumption of Facts.*—A charge assuming that testatrix signed her will and requested its attestation, was erroneous, where such facts were in dispute.

7. *Same; Submitting Legal Questions.*—A charge referring to the jury the determination of a legal question of testatrix's mental capacity to make a will, without explanation as to what constitutes such incapacity, was erroneous, as submitting a legal question to the jury.

8. *Wills; Execution; Signature.*—A will is not legally executed where the testator's signature is procured by someone else holding his hand, if he is not in a condition to know what is being done.

9. *Same; Contest; Mental Capacity.*—In determining whether testatrix was competent to make a will, the jury can consider her mental and physical condition at the time, whether she was confined to her bed, and whether her power and independence of mind

[Whitsett, et al. v. Belue, et al.]

were subdued by morphine, sickness and old age, and a charge so instructing is not error.

10. *Same; Mental Capacity; Influence of Drugs.*—The influence of morphine or opiates does not render one mentally incapable of making a will without regard to the degree of the influence.

11. *Evidence; Secondary; Admissibility.*—One offering secondary evidence of a paper must generally show that to a reasonable degree he has exhausted all means of locating the paper, and that he has made search at the place where the paper was kept.

12. *Same; Preliminary Proof.*—A statement by a witness that he did not keep the letter, that it had been either lost or destroyed, was sufficient proof of loss to admit secondary evidence of its contents.

13. *Witnesses; Contradiction; Materiality.*—Contradictory statements made by a witness must refer to a material matter before they can be considered by the jury.

14. *Same; Immaterial Matters.*—It is a general rule that where a witness is asked concerning an immaterial matter, the party calling for such evidence is concluded by the answer, and cannot contradict it; a distinction exists, however, between irrelevant matter, affecting a witness's general character, and that affecting his general crediility, in the particular case, contradiction under the latter circumstances being permissible.

15. *Same.*—A witness for proponents testify to facts tending to show testatrix's mental capacity. On cross examination, witness denied that he had written a letter to his father stating that he had been told that, if the will was defeated, he might have to make a certain payment. Held, that the testimony by the father, on proof of the loss of the letter, where the witness had written such statement, was not objectionable as being immaterial.

16. *Same; Cross Examination; Bias or Interest.*—Although it might otherwise be immaterial great latitude is allowed on cross examination to show any circumstance tending to show bias or interest which might influence the testimony of a witness.

APPEAL from Lauderdale Probate Court.

Heard before Hon. JOHN L. HUGHSTON.

Application by W. M. Whitsett and others for the probate of the will of Martha Higgins, deceased, to which a contest was filed by J. J. Belue and others. Probate denied, and proponents appeal. Reversed and remanded.

It appears that, in the drawing of the jury, 18 were drawn, but only 13 appeared. The court impaneled a jury of 12, and proponents challenged one of them, whereupon the court called around the thirteenth man

17—172.

to appear, and the proponents accepted him. The proponents then moved the court to require .the contestant to pass upon the thirteenth man before he had taken his seat in the jury box; but the court declined to require them to do this, and put the 12 men on the contestant. The proponent then challenged another member of the jury drawn as aforesaid, who was qualified and who was declared satisfactory to the proponent, when the same motion was made as to him and denied by the court, and this was kept up until the jury was completed.

The grounds of contest were: (1) That the paper was not duly executed as the last will and testament of Martha Higgins; (2) that at the time of its execution she was of unsound mind; (3) that her mental and physical condition was such as to render her incapable of executing a valid will and testament; (4) dominion and undue influence of some of the proponents over the testator; (5) a conspiracy, on account of her condition, among the proponents and others to induce her to move over to their home, and to remain there while she was sick, and that while in this condition they procured the execution of said will, without the knowledge of any of her family or relatives, had it executed secretly, and retained its possession and custody after its execution, and that it was done without any independent advice, and was wholly the result of such influence and fraud.

The proponent requested the following charge which was refused: (E) "I charge you that, if you believe all of the evidence, you will find that the will was executed with all the formalities required by law. If the name of the testatrix was affixed to the will, either by Dr. Lee by request of testatrix, or by Dr. Lee directing the hand of testatrix, I charge you that this was sufficient signature under the law."

The following charges were given at the request of the contestant: (4) "In determining the credibility of any witness, the jury can consider the manner of the witness on the stand, and whether he has made contradictory statements." (22) "If you are reasonably satisfied from the evidence that the party who wrote the will made contradictory statements about the same, you can consider the same in determining what weight to give to his evidence." (5) "It is common knowledge that the use of morphine, taken constantly, subdues and weakens more or less the will power and independence of mind; and hence you can look to the fact, if it be a fact, that testatrix was under the influence of morphine at the time of making the will, and was in no mental condition to make a testamentary disposition of her property." (6) "In determining whether testatrix was competent to make a will, you can consider the condition of testatrix, her mental and physical condition at the time, whether she was confined to her bed, and whether her will power and independence of mind were subdued and weakened by morphine and sickness and old age." (7) "I charge you, gentlemen of the jury, that the issue in this case, on the question of mental capacity to make the will offered for probate, is to be determined by the mental status of the testatrix at the time of the execution of the will, and the law declares the standard to be that the testatrix shall have had mind and memory sufficient to understand and know what she was doing at the time the witness Lee read over to her the will, or she read the same over and signed the same, and requested him to witness the same, and also at the time the witness Whitten signed the same. In determining that issue you are to consider all the evidence offered as to her mental condition, that relating to her condition prior to the alleged execution, as well as that sub-

sequent to the alleged execution; and if the evidence reasonably satisfies you that, in the interval between the signing of the will by the witness Lee and the time of the alleged request of the witness Whitten to sign the same, and his signing accordingly, that the testatrix was given or administered an opiate, and that she was under the influence of the same, you may consider such fact in connection with all the other evidence in the case in determining the issue of the mental capacity or incapacity to make the will." (8) "If the jury believe from the evidence that the testatrix was at the time of the execution of said will under the influence of morphine or opiate, that she was mentally incompetent to make a testamentary disposition of her property, your verdict will be for the contestant."

GEORGE P. JONES, and A. H. CARMICHAEL, for appellant. Counsel discuss the organization of the jury and concede that the court may refuse to fill the jury, and require the parties to pass on those present and in the box; and that as a general proposition, that where the statute does not provide the method of challenge, it rests largely in the discretion of the court, and that this discretion will not be reviewed unless abused, but they contend that in this instance, the discretion was greatly abused. They insist that charge E should have been given for the proponent, and that the court erred in giving charges 4 and 22 for contestant.—4 Mayf. pp. 1194-5; 7 Enc. of Evi. 78. They insist that charges 5, 6 and 7 should not have been given, as well as charge 8, as these charges either assume facts in dispute, or invade the province of the jury. Counsel also discuss the admission and exclusion of evidence, but without citation of authority.

EMMETT O'NEAL, and PAUL HODGES, for appellee.
The court did not err in organizing the jury.—12 Enc.
P. & P.; *State v. Marshall,* 8 Ala. 302; *Brown v. R. &
D. R. R. Co.,* 86 Ala. 206; *Speigner v. The State,* 62 Ala.
382. There is no error in admitting evidence of
Farris in regard to the letter alleged to have been writ-
ten to his father.—*L. & N. v. Tegnor,* 125 Ala. 593;
*Naugher v. The State,* 23 South. ___; *Estes v. The State,*
37 South. 85; 83 Ala. 36; 106 Ala. 580; 113 Ala. 70; 89
Ala. 79. Charges 4 and 22 were correct and properly
given.—*Evans v. The State,* 25 South. 175; 2 Mayf.
576. Charge 5 was properly given.—11 Enc. P. & P.,
189. Charge 7 was proper, as well as charges 6 and 8.
—Authorities supra.

SIMPSON, J.—This is a contest of the will of Mar-
tha Higgins, deceased, filed by the appellees. Only 13
of the 20 persons summoned as jurors answered to their
names, and the proponent moved the court to have 7
jurors summoned, which motion the court overruled,
and had 12 jurors placed in the box. There was no er-
ror in this. Section 6198 of the Code of 1907 provides
that "from the persons so summoned and in attendance
a jury shall be organized," and there is no provision
requiring 20 to be in attendance before the jury is
formed.

As to the order in which the challenges were required
to be presented, our statute has not prescribed any or-
der, and the authorities are clear to the point that this
is a matter resting in the sound discretion of the trial
court, and will not be revised unless there has been an
abuse of that discretion to the injury of the party com-
plaining.—*Wilson v. State,* 31 Ala. 371, 375; *Barker v.
Bell,* 49 Ala. 284, 291; *Scheiffelin v. Scheiffelin,* 127
Ala. 14, 33, 28 South. 687; *Hodge et al. v. Ramo,* 155

Ala. 175, 176, 45 South. 678; *Gravely v. State,* 45 Neb. 878, 64 N. W. 452; 1 Thompson on Trials, § 94, p. 91; 24 Cyc. 365; 12 Ency. Pl. & Pr. 501. We cannot say that it was such an abuse of the discretion reposed in the court as to constitute reversible error.

The next assignment of error insisted on is the refusal of the court to give charge E requested by the proponent. When a charge contains several distinct alternative propositions, each alternative must be correct, in order to place the court in error for refusing the charge. If the testatrix did not execute the will at all, as contended by the contestants, by reason of not being in a condition to know what was being done, by some one else holding her hand, it could not be said to be "executed" with all the formalities required by law. The first proposition, as stated, was at least misleading. Without discussing the other alternative propositions, this is sufficient to authorize the court's refusal to give the charge. There was no error in refusing to give said charge.

The court erred in giving charges 4 and 22, at the request of the contestants. Said charges fail to state that the contradictory statements, by a witness, which the jury are authorized to consider, must be in reference to a material fact.—*Crawford v. State,* 112 Ala. 4, 11, 25, 21 South. 214; 7 Ency. Ev. 78, and cases cited.

Charge 5, given at the request of the contestants, invades the province of the jury, and should have been refused.

There was no error in giving charge 6, at the request of the contestants.

Chage 7 should have been refused, as it assumed the disputed facts, that she signed the will and requested Lee to witness it.

It is difficult to give any grammatical construction to charge 8, given at the request of the contestants. If it means that being under the influence of morphine or opiates (without regard to the degree of influence) rendered her mentally incompetent, it is not correct. If it means, if the jury believe that being under the influence, she was also mentally incompetent, that would be referring to the jury the determination of a legal question, without explaining to them what constitutes mental incapacity to make a will. We hold that the charge should have been refused.

The witness T. C. Farris, on the part of the proponents, testified to facts tending to show the mental capacity of the testatrix. On cross-examination, he was asked, "if he did not, after his return to his home in Prague, Okl., write to his father, John M. Farris, at Florence, that one of his (witness') neighors out there had told him, witness, that if the will of Mrs. Higgins was defeated, he might have to pay the money again?" (referring to money he had paid the testatrix shortly before her death), to which he replied that he had not written such a letter. The contestants placed upon the stand T. C. Farris, who testified that he received a letter from his said son, T. C. Farris after the death of Mrs. Higgins, and after his (T. C.'s) return to Oklahoma, and said witness stated: "I have not the letter. I did not keep it. It has either been lost or destroyed." He was then asked whether or not in that letter said T. C. Farris had made the statement above set out.

The objection to this question, and to any answer thereto, is based on the propositions that "(1) the letter was the highest and best evidence of its contents; (2) that the letter had not been shown to the witness, T. C. Farris; and (3) that the matter sought to be elicited is immaterial. It will be noticed that the objection did

not really present the point that the loss of the letter had not been properly proved. The objection that the letter is the best evidence, and that it has not been produced, is no answer to a question predicated on the loss of the letter, which has been attempted to be proved. However, as this question may come up on the subsequent trial of this case, we treat it.

It is a general proposition that a party offering secondary evidence must show that he has, to a reasonable degree, exhausted all means of locating the paper, and it is also stated that it must be shown that search has been made of the place where the paper has been kept. —8 Ency. Ev. 350 et seq.; 17 Cyc. 543 et seq.; *McGuire, Adm'r, v. P. & D. of Bank of Mobile,* 42 Ala. 589, 592; *Phoenix Ins. Co. v. McAuthor,* 116 Ala. 659, 663, 22 South. 903, 67 Am. St. Rep. 154. We have had occasion to consider this principle at some length, citing Prof. Wigmore's opinion that it is a matter which should be left to the discretion of the trial judge, and we stated that it is not sufficient for the witness to state "that he has not seen the paper and is satisfied that it is lost," but that "it is necessary to show that search has been made in the place where the instrument was last seen or kept, or in the place where it is likely it would be found, if in existence" (*Saunders v. Tuscumbia Roofing & P. Co.,* 148 Ala. 519, 521, 522, 41 South. 982); but it will be noted that the witness, in this case, states positively that he had not the letter, that he did not keep it, and that it has been either lost or destroyed. If he did not keep it, it is difficult to suggest what place should be searched for it, in view of the further statement, not merely that he is satisfied, but that *it is* lost or destroyed. We think the proof of loss was sufficient.— *Postel v. Palmer,* 71 Iowa, 157, 32 N. W. 257, 258.

As to the objection to the immateriality of the evidence, great latitude is allowed on cross-examination to show any circumstance, though it might be otherwise immaterial, which has a tendency to show bias or interest on the part of the witness, which might influence his testimony.—3 Ency. Ev. 849, et seq. It is also true, as a general proposition, that if a witness, on cross-examination, be interrogated as to a matter wholly immaterial to any issue in the case, the party calling for such evidence is concluded by the answer and cannot impeach the witness by contradicting such answer.—*Carter v. State,* 133 Ala. 160, 32 South. 231. Yet a distinction has been drawn between irrelevant matter affecting the general character of the witness, and that which affects his credibility in the particular case, it being allowable to contradict his statements in the latter case.—*Bullard & Wife v. Lambert,* 40 Ala. 204, 211; *McHugh v. State,* 31 Ala. 317, 321; *Fincher v. State,* 58 Ala. 215, 219; *Jones v. State,* 141 Ala. 55, 58, 37 South. 390. See, also, *Estes v. State,* 140 Ala. 151, 37 South. 85.

Referring back to what we have said in regard to charges 4 and 22, the manner in which the statements just disposed of may affect the witness' credibility does not rest on his making contradictory statements, but on the fact, if the jury so believe, that he is to some extent interested in the result of the suit The objections to the testimony of John M. Farris were properly overruled.

The decree of the court is reversed, and the cause remanded.

Reversed and remanded.

DOWDELL, C. J., and MCCLELLAN and MAYFIELD, JJ., concur.