13 So.2d 583

**LEE v. STATE.**

**6 Div. 942.**

Court of Appeals of Alabama.

March 2, 1943.

Rehearing Denied March 16, 1943.

[1] Ante, p. 89.

Appeal from Circuit Court, Jefferson County; George Lewis Bailes, Judge.

Virgil A. Lee was convicted of having carnal knowledge of a girl under the age of twelve years, and he appeals.

Horace C. Wilkinson, of Birmingham, for appellant.

Wm. N. McQueen, Acting Atty. Gen., and Bowen W. Simmons, Asst. Atty. Gen., for the State.

SIMPSON, Judge.

The defendant was indicted and tried for a capital felony. It was charged that he "did carnally know, or abuse in the attempt to carnally know Elese Lee, a girl under the age of twelve years," etc. The statute prescribes punishment of imprisonment in the penitentiary or death, at the discretion of the jury. Code 1940, Title 14, Sec. 398.

The jury assessed punishment in the case at fourteen years imprisonment.

The verdict returned was not received in open court in the presence of the defendant, as the law requires, but, to the contrary, was delivered in a sealed envelope to the bailiff after court had adjourned and in the absence of the judge and the defendant. The jury was thereupon allowed to disperse and were never again reassembled.

■ It has been uniformly held by our appellate courts that, in a felony case, a verdict rendered in the absence of a defendant is a nullity, in fact is no verdict, and if so rendered and there is an *unauthorized* discharge of the jury, this results in the acquittal of the defendant. Whitehurst v. State, 3 Ala.App. 88, 57 So. 1026; Waller v. State, 40 Ala. 325; Cook v. State, 60 Ala. 39, 31 Am.Rep. 31; Jackson v. State, 102 Ala. 76, 15 So. 351; Hayes v. State, 107 Ala. 1, 4, 18 So. 172; Wells v. State, 147 Ala. 140, 142, 41 So. 630; Harris v. State, 153 Ala. 19, 49 So. 458.

■ The record must affirmatively show the prisoner's presence at each successive step in the trial. Young v. State, 39 Ala. 357; Frost v. State, 225 Ala. 232, 142 So. 427.

It was declared by this court in the Whitehurst case, 3 Ala.App. 88, 57 So. 1026, above (opinion by DeGraffenried, J.), that: "Undoubtedly a writing delivered by a jury in a felony case to a court, or the clerk of the court, in the absence of the defendant, *is no verdict*. In a felony case it is *essential* that the verdict of the jury shall be rendered in *open court* in the presence of the *judge* and of the *defendant*. Hayes v. State, 107 Ala. 1, 18 So. 172." (Our emphasis.)

Cases by our Supreme Court (supra) are of like tenor. In Cook v. State, 60 Ala. 39, 31 Am.Rep. 31, declaring the necessity of the defendant to be present at the rendering of the verdict, it was held that "if [the verdict is] rendered against him during his absence, it is *void*", 60 Ala. at page 40, 31 Am.Rep. 31. And in the Waller case, 40 Ala. 333, it was stated that defendant's counsel could not "waive the right of a prisoner, charged with a felony, to be present when the jury delivered their verdict to the court."

■ Hence the purport of the holdings of all of our cases is that, in felony cases, the personal presence of the defendant when the verdict is rendered is absolutely essential and if he is not present the verdict is entirely a nullity. He *must* be (not is entitled to be) present at the rendering of the verdict. Thus was the language of the opinion by the late and learned Chief Justice Anderson of our Supreme Court in the Wells case, 147 Ala. at page 142, 41 So. at page 631 where the holding was: "In cases of felony the prisoner *must be* [not is entitled to be] *personally present when the jury return their verdict*, and to support a conviction the record must affirmatively declare his presence. Hughes' case, [State v. Hughes] 2 Ala. 102, 36 Am.Dec. 411; Eliza's case, [Eliza v. State] 39 Ala. 693; Waller's case, 40 Ala. [325] 326. And in a case of felony it is error to allow the verdict to be received by the clerk during a recess of the court in the absence of the prisoner, even though this be done with the consent of his counsel. Waller's case, supra." (Emphasis supplied.)

The learned Attorney General, in sponsoring the sustention of the action, here, of allowing the receiving of the verdict and the discharge of the jury after adjournment of court and in the defendant's absence, does not seriously question the correctness of the foregoing principles, but contends that the defendant waived the right to claim such invalidity by his previous consent and request that the verdict be returned in his absence. (The record does not show that he consented that the verdict be received by the bailiff after adjournment of court or in the absence of the judge.)

■■ The inquiry, then, is whether or not the defendant may—or can—juridically divest himself, by consent or waiver, of this constitutional protection (and it has been held to be a constitutional right, State v. Hughes, 2 Ala. 102, 36 Am.Dec. 411; Lewis v. United States, 146 U.S. 370, 374, 13 S.Ct. 136, 137, 36 L.Ed. 1011, 1013; Hopt v. Utah, 110 U.S. 574, 579, 4 S.Ct. 202, 28 L.Ed. 262; Percer v. State, 118 Tenn. 765, 103 S.W. 780; Riddle v. Commonwealth, 216 Ky. 220, 287 S.W. 704) to be personally present when the verdict of the jury is returned. In other words: Is his personal presence at the rendition by the jury of the verdict against him in a felony case—here a trial for a capital offense—indispensable to the validity of the proceedings, or can he waive his personal presence during this critical stage of his trial? "Trial" in a criminal case includes the rendition of the verdict. State v. Reed, 65 Mont. 51, 210

F. 756; Riddle case, supra; State v. Thompson, 56 N.D. 716, 219 N.W. 218.

A difference of opinion may prevail elsewhere as to this question (14 Am.Jur., p. 909, Sec. 203, West's Digest Series, Crim. Law, 636(8)), but it seems settled by the foregoing Alabama authorities that in a felony case, the personal presence of the accused at the rendition of the verdict by the jury cannot be dispensed with. The phraseology of the opinions in these cases, and others of similar holding dealing with the subject, is too clear and strict to admit of other interpretation. As instances: In the Cook (a felony) case, 60 Ala. 40, 31 Am.Rep. 31, it was stated that the rendering of such a verdict against the defendant was "void"; and in the Wells case (147 Ala. at page 142, 41 So. at page 63), that in a felony case the defendant "must be [not may be] personally present when the jury return their verdict and to support a conviction the record must affirmatively declare his presence."

If so, and the proceedings are void when the verdict is otherwise rendered, then it is not conceivable that the consent or waiver of the defendant can give life and effect to that which was inherently void and a nullity.

Likewise, in Wells, supra, the clear and positive inference is made that a defendant, in a felony case, *cannot waive his personal presence,* (1) where it was said that counsel could not waive it—and we perceive no distinction in principle whether acting by himself or through counsel—and (2) where it was stated: "The foregoing rule relates to the trials of misdemeanors, as well as felonies, *except* the defendant *may* waive the right to be present when the verdict is returned and other formalities connected with the return and reception thereof in misdemeanor cases." (Our italics.)

Thus, of course, the converse follows that in felony cases he cannot waive this right.

If the foregoing opinions by eminent Justices of our Supreme Court are to be our guide (and they must be, Code 1940, Title 13, Sec. 95), then the conclusion must result that the verdict of the jury here, as in the cited cases, was a nullity—was void—and totally ineffectual to support the judgment of conviction. This, too, upon the general principles hereinabove stated, without reference to the fact that the defendant in this case was tried for a *capital crime.*

Erudite discussion of the rule is found in the case of Noell v. Com., 135 Va. 600, 115 S.E. 679, 681, 30 A.L.R. 1345, 1349, 1350. We trust the importance of the question justifies further illustration and the following quotation therefrom, to-wit: "That principle did not spring solely from a regard for the welfare of the accused. The public has an interest in every case involving the life or liberty of a citizen, and both in England and in this country it has long been recognized as a settled rule of the common law, based as well upon public policy as upon the interest of the accused, that his continuous presence, from arraignment to sentence, is an essential part of the process of law provided for his trial and without which the courts have no jurisdiction to pronounce judgment upon him. Constitutional provisions and statutory enactments not in conflict with such provisions may modify or abrogate this general rule. But in the absence of constitutional or statutory change—and there is none as to felony cases in Virginia [*nor in Alabama*]—conformity to the rule is essential to jurisdiction, and the accused cannot waive it."

See also Hopt v. Utah, 110 U.S. 574, 578, 4 S.Ct. 202, 28 L.Ed. 262; Lewis v. United States, 146 U.S. 370, 371, 372, 13 S.Ct. 136, 36 L.Ed. 1011; State v. Reed, 65 Mont. 51, 210 P. 756.

In the present—a capital—case, the correctness of our conclusion is certainly not subject to successful challenge.

The almost universal rule is—and in Alabama the law has always been—that "the right to be present during the trial of an indictment for felony cannot be waived by accused in a capital case." 23 C.J.S., Criminal Law, § 975, p. 309, 310, id. note 39, p. 310; State ex rel. Battle, 7 Ala. 259, 262; McCauley v. State, 26 Ala. 135, 138.

Before this rule was applied in all felony cases, it was regarded by our courts as axiomatic in the trial of capital cases. The observation in the case of State ex rel. Battle, 7 Ala. 259, 262, is typical, where it was said: "We [have] determined that the verdict of guilty in a case capitally punished *could not,* if adverse to the prisoner be received in his absence."

Similar pronouncements are found in other cases cited supra, notably Waller v. State. The essentiality of the personal presence of the defendant at the reception and rendition of the verdict in such cases

96

seems to be jurisdictional and, if so, of course non-waiverable. And, as will be seen from a review of the authorities, this rule generally prevails in a capital trial, regardless of the punishment ultimately fixed in the verdict of the jury. The test is: Was the defendant tried in a capital case?

A capital case is a criminal case in which a person is tried for a capital crime, Adams v. State, 56 Fla. 1, 48 So. 219; that is, a case punishable with death, i. e. in which the death penalty *may*, but need not necessarily, be inflicted, State v. Giberson, 94 N.J.Eq. 25, 119 A. 284. See also State ex rel. Timberman v. Hackmann, 302 Mo. 273, 257 S.W. 457. A capital offense is one where the punishment may be death. Ex parte Herndon, 18 Okl. Cr. 68, 192 P. 820, 19 A.L.R. 804; Ex parte Dusenberry, 97 Mo. 504, 11 S.W. 217; State v. Johnston, 83 Wash. 1, 144 P. 944, 945; Kerley v. State, 89 Tex.Cr.R. 199, 230 S.W. 163; Cæsar v. State, 127 Ga. 710, 57 S.E. 66. A capital offense exists where the penalty of death may be inflicted, regardless of whether it is inflicted. State v. Dabon, 162 La. 1075, 111 So. 461. The term includes a crime which may be punished, in the discretion of the jury, with the penalty of death. Ex parte McCrary, 22 Ala. 65, 72. In other words, as observed in the Caesar case above (Ga.): "If under any circumstances the penalty of death can be inflicted, the offense is capital, whether it is actually inflicted in a' particular case or not. If under no circumstances the death penalty can be inflicted, the offense is not capital." 57 S.E. at page 67.

In speaking of this rule of non-waiver in a capital case, the Court of Appeals of New York (which, by the way, holds to the majority view that in non-capital felonies a defendant can waive his presence during trial) observed: "In capital cases it is held that even though the defendant has waived his right to be present, a verdict rendered in his absence, or after a trial from which he has been absent is defective and the conviction must be reversed." People v. La Barbera, 274 N.Y. 339, 8 N.E.2d 884, 885.

And the Supreme Court of Mississippi (which now seems to have changed the rule because of a statute authorizing such waiver) had this to say of the general rule of non-waiver in a capital case: "Wherever the charge is a capital one, the courts have held uniformly, in favorem vitæ, that the defendant cannot waive his right to be present, and that whether he be in jail, subject to the power of the court to produce him, or on bond, it is fatal error to receive the verdict in his absence." Sherrod v. State, 93 Miss. 774, 47 So. 554, 555, 20 L.R.A.,N.S., 509.

And in speaking of the immateriality of the punishment assessed in such a case, the discussion concluded that: "Of course, it is entirely immaterial that the verdict in this case was for manslaughter. The test is, Was the charge in the indictment a capital one? "

This is the situation in the instant case. The defendant was tried in a capital case. The charge in the indictment was a capital one, punishable by death, at the jury's discretion. Code 1940, Title 14, Sec. 398. Hence, it was fatal and vitiating error to receive the verdict in absence of the defendant, and a reversal must be entered.

We confess our reluctance in so ruling *here* where a generous and considerate court allowed this unusual procedure to be undertaken as a convenience to the defendant. But the law must rule all cases alike. Consistency in just judicial pronouncements must be maintained. The principle, "stare decisis et non quieta movere", is firmly embedded in our judicial fabric. Temporal winds of expediency in law trials should not be permitted to invade our fundamental rules. Whatever may be the trend of modern decisions elsewhere, it is to be hoped that our own courts will not forsake the ancient landmarks which sought to establish due safeguards for the unfortunates on trial for serious criminal offenses. Our learned forbears jealously guarded and preserved a just and fairly workable system of criminal trial. It is a part of our canonical structure—and in felony trials nonwaiverable—that a defendant must be personally present at every important step in his trial, including that crucial juncture where the jury returns a verdict against him. The question of injury to him should not and does not control. To depart from this safe status would embark us upon that other sea—dangerous, we think—of judicial interpretation where it is now the law that a defendant by consent or waiver may be tried and convicted in his absence, and, if such be the jury's verdict, the final result, death in expiation for his crime. This would indeed be an innovation in Alabama procedure, shocking perhaps to laymen. The rule in some other jurisdictions to the contrary

notwithstanding, it has never been approved here. We hope it never will be.

■ The contention that the defendant has been acquitted because of the discharge of the jury upon the rendition of the verdict —even though void—is untenable.

The cases (Wells, supra, et al.) which state the rule base it upon the principle of double jeopardy. Here, however, the defendant cannot claim its protection. The jury was discharged with his consent and request previously given. As observed in Gunter v. State, 83 Ala. 96, 104, 105, 3 So. 600, 604, the discharge of the jury before rendering a verdict, or after rendering a void one, would operate as an acquittal only if done "without legal necessity or *consent.*" Such was the holding in Waller v. State, 40 Ala. 325, where the consent was by counsel, and in State ex rel. Battle, 7 Ala. 259, where defendant wilfully abstained from appearing in court for the rendering of the verdict. In each of these cases, the cause was reversed for a new trial. The sixth headnote of Waller correctly epitomizes the principle: "Where a judgment of conviction in a criminal case is reversed, on error or appeal, at the instance of the prisoner, he may be tried again; even where the verdict is informal, or insufficient to sustain a conviction."

So, where the error in receiving the irregular or void verdict is consented to or induced by the defendant, he is not entitled to an acquittal but only to a reversal of the conviction. Under such circumstances, it is considered that he has waived (which he may do, it being a personal right) immunity from second jeopardy. 22 C.J.S., Criminal Law, § 245, p. 382; Id, Criminal Law, § 277, p. 412.

There are other analogous Alabama cases declaring the same principle. Apposite is Hughes v. State, 35 Ala. 351, 358-360. Says the court there: "The principle upon which rests this doctrine of the defendant's capacity to consent to the discharge of the jury is, that the constitutional immunity against a second trial is for his benefit, and he may waive it."

In that case, the defendant agreed in advance to the discharge of the jury in event of a certain contingency. In binding the defendant to this agreement and as waiving the right to claim jeopardy by the jury's discharge, it was held: "There can be no distinction in principle, between a consent given before the trial, that, upon the occurrence of a certain contingency during the trial, the jury shall be discharged, and a consent to the discharge of the jury given at the time when the discharge is ordered. If the defendant have capacity to bind himself by the consent in the latter case, he may in the other."

See also Lewis v. State, 121 Ala. 1, 25 So. 1017; State v. McFarland, 121 Ala. 45, 25 So. 625; Stone v. State, 160 Ala. 94, 49 So. 823, 135 Am.St.Rep. 69; Pope v. State, 228 Ala. 609, 155 So. 79; Pierce v. State, 8 Ala. App. 359, 63 So. 33, where the import of the holdings is that the right to claim immunity from second jeopardy is waived where the jury is discharged at the instance or with the consent of the defendant.

The defendant's status is the same here. The jury having been discharged with his agreement previously given, he has waived his right to claim jeopardy because of the discharge of the jury after rendering the abortive verdict aforesaid. He is, therefore, not entitled to an order of discharge, but merely to a reversal of the judgment of conviction.

■ No contention was made by the evidence that the defendant was guilty of actual carnal knowledge of the girl. The evidence supports the inference, however, of abuse of her genital organs in the attempt at carnal knowledge. This latter offense is as equally proscribed by the statute. An injury to the child's sexual or genital organs in such attempt is the abuse to which the statute refers. Dawkins v. State, 58 Ala. 376, 379; 29 Am.Rep. 754.

■ The crime may be committed without any contact of the genital organs. The principle is illustrated by this quotation from the Dawkins case, 58 Ala. at page 379, 29 Am.Rep. 754: "It is said that often the chief injury to the child results from the use of the fingers of the male. There have been cases in which, without the contact which would constitute the complete offense, bodily harm has been inflicted by cutting the private parts of the child. An injury to these parts, in the attempt at carnal knowledge, is the 'abuse' to which the statute refers, and not to forcible or wrongful ill usage, which would be an element of the offense of an assault with intent to ravish the child."

In Castleberry v. State, 135 Ala. 24, 33 So. 431, it was held that the mere "hurting" of these organs of the female is an abuse

98

within the meaning of this section, though they are not bruised, cut, lacerated or torn.

■ In the case at bar, it was proven for the State that the defendant came to the child's bed and put his hands on her private parts, and that, when he did, it "hurt" her; that this occurred several times and that he said he would kill her if she told it. The doctor's testimony showed without controversy that these organs had been seriously abused, as that term is used in the statute. True, as to what the defendant was attempting, or intended, to do when he did these things is left to inference, but it is a strong one against him. If the child's testimony was true—and this was exclusively for the jury—then the jury was reasonably justified in drawing the inference that such conduct was leading up to and was the initial stage of the attempt at carnal knowledge. In fact, we can conceive of no reasonable view, or inference, to the contrary.

Concededly, this is one of those borderline cases where a certain phase of the *positive* proof was more or less weak and inconclusive—i. e., as to the attempt at carnal knowledge—but as stated the evidence adduced supports strongly the inference that such were the defendant's actions. In fact, what else was the defendant attempting by his several "touchings" with his hands of the child's privates? No other reasonable inference is deducible.

■ The rule to test the sufficiency of the evidence to avert the general charge for the defendant is, as is well understood, that it afford inference adverse to him. Kabase v. State, Ala.App., 12 So.2d 758 [1]; Hargrove v. State, 147 Ala. 97, 41 So. 972, 10 Ann.Cas. 1126, 119 Am.St.Rep. 60. And this is true however weak and inconclusive the evidence may be, tending to sustain the charge. Grimes v. State, 24 Ala.App. 378, 135 So. 652; Howard v. State, 108 Ala. 571, 576, 18 So. 813.

■ It is our view that the general affirmative charge for the defendant was correctly refused.

■ It was proper to offer evidence of more than one such occurrence between the defendant and the child. The State is not restricted to proving only one such act. Evidence of such acts before and after—provided not too remotely connected, in point of time, to—the alleged act on which the prosecution is based, is provable as bearing upon the improper relation and intimacy of the parties, thereby tending to sustain the principal charge. Harrison v. State, 235 Ala. 1, 178 So. 458.

■ The victim of the present alleged abuse was the defendant's daughter. Under the rule discussed and declared in the case of Wilkins v. State, 29 Ala.App. 349, 197 So. 75, certiorari denied 240 Ala. 52, 197 So. 81, the claim by his other two daughters of previous acts of intercourse with them or proposals by him that such intimacies be indulged in was provable as bearing upon his intent and motive. That is, as tending to show what his intent or motive was when he put his hands upon this child's sexual organs.

Recent discussion of the rule governing the admissibility of evidence of other similar acts and crimes as the one upon which the prosecution is based, as bearing upon the motive, intent, scienter, identity, etc., may also be found in Henry Daniels, Jr. v. State, 243 Ala. 675, 11 So.2d 756; Curtis Robinson v. State, 243 Ala. 684, 11 So.2d 732; Johnson v. State, 242 Ala. 278, 5 So.2d 632; Jackson v. State, 229 Ala. 48, 155 So. 581.

■ It is contended that, because of the overwhelming weight of the evidence against the verdict, a new trial should have been ordered, but, as to this, we do not think the trial court's conclusion should be overruled. It can be said for the defendant that there might be plausibility to his claim that the whole case was inspired by the antagonism of his two older daughters, engendered because of his chastisement of them for their alleged infractions of the rules he had prescribed for their proper conduct. But this was strenuously denied by the daughters and the truth of these respective claims between the members of this unfortunate family was for the jury, and not for an appellate court, to decide.

We are impressed that the rulings upon the evidence pending trial were free of any error prejudicial to the defendant. On the contrary, these rulings evinced astuteness and a full grasp of the pertinent principles of law by the learned trial judge.

For the error hereinabove noted, however, we think the judgment should be reversed and the cause remanded.

Reversed and remanded.

[1] Ante, p. 77.

On Rehearing.

PER CURIAM.

The learned Assistant Attorney General, with commendable candor, asserts in his brief supporting the application for rehearing: "In making this application for rehearing in this cause there is nothing I can do but be frank with this Court. Judge SIMPSON, in writing the opinion of the Court which is an able one, states without question in my mind the law as it now exists in Alabama, but we think the rule as heretofore adhered to by our courts has been of too strict a construction. * * * We want it understood that we are not here contending that the opinion of the Appellate Court in this case is error but what we are insisting on is for this court to modify the rule."

Could we change the rule (Code 1940, Title 13, Sec. 95), we would not do so. The rule of logic which forbids the absence of a defendant at each important step of a serious criminal trial is inescapable.

If such a case is of sufficient importance to be instituted, then the gravity thereof should attend it until its conclusion. Conduct of no important phase of it should be left to the whim of the jury and a court bailiff, all the principals therein, including the judge and the defendant, having meanwhile absented themselves and court having adjourned. This is tantamount to locking up the courthouse and leaving the conduct of the trial in the hands of the jury and the bailiff. This should not be.

While commending the able Attorney General for his earnest attention to duty in seeking to sustain such action at nisi prius, we are fully persuaded that our conclusions hereinabove find solid support in reason and authority, and that the application must be overruled.

Opinion extended and rehearing denied.