45 So.2d 857

## NOBLE v. STATE.

### 7 Div. 19.

Supreme Court of Alabama.

April 13, 1950.

H. Herbert Evans, of Anniston, for appellant.

520

A. A. Carmichael, Atty. Gen., and L. E. Barton, Asst. Atty. Gen., for the State.

FOSTER, Justice.

This is an appeal from a conviction of the offense of carnal knowledge of a girl under twelve years of age, section 398, Title 14, Code, and in another count the indictment charged incest, since the girl is alleged to be the daughter of defendant, section 325, Title 14, Code. The verdict was guilty on the first count.

The first contention is that since the act was with her consent, she was an accomplice and, therefore, that defendant could not be convicted on her uncorroborated testimony on the authority of Denton v. State, 17 Ala.App. 309, 85 So. 41; section 307, Title 15, Code. That was on a charge of incest in connection with a woman over the age of consent. But when it is as to an offense in connection with a girl under the age of consent, she cannot be an accomplice, and the rule has no application. Duncan v. State, 20 Ala.App. 209, 101 So. 472.

It is next insisted that the girl involved in the charge was an incompetent witness because of her age,—eight years. The ap-plicable rule in that connection is contained in section 439, Title 7, Code, making children incompetent witnesses when they "do not understand the nature of an oath." This principle existed prior to the statute and apart from it. In the case of Carter v. State, 63 Ala. 52, 35 Am.Rep. 4, it is stated in the same language, where also it is said to be "the duty of the presiding judge to examine him or her, without the interference of counsel further than the judge may choose to allow, in regard to the obligation of the witness' oath; and, in proper cases, to explain the same to one intelligent enough to comprehend what he says; and then to determine whether or not such child shall be sworn and permitted to testify."

Again, in Beason v. State, 72 Ala. 191, the judgment was reversed because the child "manifested an entire want of instruction as to the nature and effect of an oath, of all religious training, and utter ignorance of the existence of a Supreme Being, 'the rewarder of truth and the avenger of falsehood.'" To the same effect of McKelton v. State, 88 Ala. 181, 7 So. 38.

In the case of McGuff v. State, 88 Ala. 147, 7 So. 35, 16 Am.St.Rep. 25, the Court held that a girl seven years old was competent to testify when "on *voir dire* shows an intelligent comprehension of the belief that a falsehood is morally wrong, and that it will be severely punished in the future."

In Walker v. State, 134 Ala. 86, 32 So. 703, a child ten years of age was permitted to testify upon showing sufficient religious and moral training.

In Castleberry v. State, 135 Ala. 24, 33 So. 431, 433, a girl eight years old, who had been thus abused, was allowed to testify, having "exhibited such a degree of intelligence, and understanding of the nature of an oath." "In this, there does not appear there was an abuse of its discretion in such a case," Compare, White v. State, 136 Ala. 58, 34 So. 177, where the child was held to have been incompetent.

The *voir dire* in the instant case consisted of questions by the court and the answers as follows:

"Q. How old are you, now? Don't be afraid. A. Eight years old.

"Q. When will you be nine? A. June 27th.

"Q. June 27th? A. Yes, sir.

"Q. Do you go to Sunday School? A. Yes, sir.

"Q. How long have you been going to Sunday School? About how long? A. I have tried to go to Sunday School every Sunday, when I was not sick.

"Q. What have you been taught in Sunday School? Did they teach you there, when you told the truth, where you will go when you die? A. Yes, sir. '

"Q. What did they teach you? When you tell the truth, when you die, where do you go? A. Go to Heaven.

. "Q. If you do not tell the truth, what did they teach you there, if you do not tell the truth? A. You will go to the booger man.

"Q. Go to the booger man? A. Yes, sir."

■ We do not think that the court abused his discretion in overruling the objection. The intelligence and understanding of the child was also indicated by her appearance and manner under the observation of the court.

Another insistence made by counsel has relation to Mrs. Eddie Noble, wife of a brother of defendant. She testified for defendant tending to show a normal family relation between him, his wife and three children. But they had become separated and divorce suit was pending at the time of trial. On cross examination she testified that prior to February 12, 1949, defendant did not try to force sexual relations on her. That she was present at defendant's house when the officers Pate and Cannon were there "investigating this incident," on February 12, 1949. The State's counsel then asked her the following question: "On that occasion, in the presence of Captain Cannon, Lieutenent Pate, Mrs. Edna Noble and the little girl, and yourself, did Mrs. * * * did you make this statement, or this in substance, that Lester had tried to force sexual relations with you?" Her answer was "No." This question was repeated, objection was made by defendant, be- cause that is not germane to the issues of this case; this defendant was not present; and this witness is not in the shoes of this defendant, and not his representative; and it is immaterial. The State's counsel stated that its purpose was a predicate to impeach the witness and was not offered for any other purpose. There was a prolonged discussion of the question by opposing counsel. Defendant's counsel insisting that it was immaterial evidence and that the witness could not be impeached by such evidence. Additional grounds of objection specified more in detail the grounds whicli raise the question argued. The court over· ruled the objection and motion to exclude and an exception was taken. The judge expressed himself as acting on the authority of Lee v. State, 31 Ala.App. 91, 13 So. 2d 583, certiorari denied, 244 Ala. 401, 13 So.2d 590. See the same case on another appeal, 246 Ala. 69, 18 So.2d 706.

The substance of the question was repeated in various forms with the same answer and same objection, was overruled and exception taken. In rebuttal the State proved by the witnesses Cannon and Pate that Mrs. Eddie Noble made such statement. Objection was duly made and overruled and exception taken.

The question presented is an interesting one and involves two principles which need analyzing in this connection. One relates to the nature of matter as to which a witness may be impeached for making contradictory statements. The other relates to a consideration of whether the contradictory statements here involved are with respect to such impeachable matter.

■ To affect the *general credit* of the witness the contradictory statements must relate to matter which is material to the issue on trial and not to those incidental or collateral facts which are remote in their application to the offense on trial and which would improperly extend the issues or involve the trial of other offenses which have no legitimate bearing on the particular offense under investigation. Langce v. State, 84 Ala. 1, 4 So. 193, 5 Am.St.Rep. 324; 19 Alabama Digest, Witnesses, ⬤➔405, page 884.

But there is an exception to this rule, that if it has relation to the credibility of the witness in the *particular case* it is admissible, although it be in respect to collateral or immaterial matter. Whitsett v. Belue, 172 Ala. 256(14), 54 So. 677; Louisville & Nashville R. Co. v. Quinn, 146 Ala. 330, 39 So. 756; Bullard v. Lambert, 40 Ala. 204, 211; Blakely's Heirs v. Blakely's Ex'x, 33 Ala. 611, 619; McHugh v. State, 31 Ala. 317, 320.

The matter as to which evidence of this witness was contradicted related to her *general credit*, since it does not reflect her attitude toward this particular case, or her animus in giving evidence. It is therefore necessary in order to sustain the ruling of the court that we find that it was material to the issues on trial. The trial court properly understood that to be the proper inquiry.

The witness had testified on cross examination, as we have noted, that defendant had not tried to force sexual relations on her. So that her statement made to the officers that he did so would be competent for impeaching purposes only, if evidence that he had tried to force her was admissible as primary evidence against defendant. 70 Corpus Juris 1046 to 1049. It was on the theory that such evidence was relevant and material that the trial court acted in overruling the objection.

The rule by which that question must be determined has gone through a course of development which has modified the original broad statement and its application. As originally applied, it was broadly stated in sex cases that the evidence of other recent sex offenses or sex depravity is admissible to show intent to indulge in sex experience in the instant case or to identify the defendant as the person who committed the sex act under investigation. Wilkins v. State, 29 Ala.App. 349, 197 So. 75, certiorari denied, 240 Ala. 52, 197 So. 81; Johnson v. State, 242 Ala. 278, 5 So. 2d 632; Robinson v. State, 243 Ala. 684, 11 So.2d 732; Lee v. State, 31 Ala.App. 91, 13 So.2d 583, certiorari denied, 244 Ala. 401, 13 So.2d 590; Lee v. State, 246 Ala. 69, 18 So.2d 706.

But there has been a limitation put upon that broad statement. Daniels v. State, 243 Ala. 675, 11 So.2d 756; Brasher v. State, 249 Ala. 96, 30 So.2d 31; McKenzie v. State, 250 Ala. 178, 33 So.2d 488.

In the Wilkins case, supra, the charge was an assault with intent to rape. So that the nature of his intent was an important controverted issue. In the Lee case, 31 Ala. App. 91, 13 So.2d 583, the question was what was his intent in putting his hand on the child's sex organs. It was held that other acts with his other children shed light on the issue of intent. The same was true as shown on the second appeal in the Lee case, 246 Ala. 69, 18 So.2d 706. In Johnson v. State, supra, the only question in the case was that of the identity of defendant as the one who committed an act which was not controverted. The Court observed that for the admissibility of such proof the question of identity must be an issue in the case. In Robinson v. State, supra, the Court was dealing with an opening statement by the solicitor as to certain remarks made by defendant in regard to such nature of offenses. The Court referred to the cases above cited and repeated the principle stated in them, and held that the opening statement of the solicitor was not an unnecessary, prejudicial or unwarranted appeal to race prejudice.

The following cases show that it was intended to limit those broad implications in applying the rule:

In Daniells v. State, supra, evidence of another offense was permitted on the issue of identification when there were certain identifying characteristics of the person who committed all the offenses and those characteristics applied to defendant. In the Brasher case, supra, it was said that for the purpose of identification, "the prosecution should not be permitted to give in evidence other crimes of the defendant, committed on or with other persons, unless they are so connected by circumstances with the particular crime in issue as that the proof of one fact with its circumstances has some bearing upon the issue on trial other than to show the defendant's bad character or moral delinquency." [249 Ala. 96, 30 So.

2d 35]. And that the rule was not extended in the Wilkins case, supra, "so as to permit the State to introduce evidence of other offenses committed by the accused with third persons for the purpose of identification when such evidence merely tends to show disposition, inclination, propensity or depravity." The McKenzie case, supra, went out on the same day as the Brasher case and referred to the principles of law above quoted from the Brasher case, both cases relying largely on Prof. Wigmore in his work on Evidence, and held that because the other offense proven against defendant had so many of the peculiar characteristics which affected the one on trial and because defendant followed the same peculiar pattern or technique in both instances, that such evidence tended to eliminate the probability that the act in that case was innocent of such intent and therefore relevant.

So that we are now distinctly in the status of holding that there must be something in the two cases to show a relevant connection such as some peculiarity in them applicable to defendant not generally obtaining, or some relevancy to the pending issue other than to show the moral delinquency of defendant.

Whether defendant tried to force sexual relations on this a married woman had no relevancy to the pending issue other than to show the moral delinquency of defendant. It was therefore immaterial and illegal, and the witness could not be impeached by proving different statements in that respect.

There was reversible error in the court overruling the objection of defendant to the testimony of Cannon and Pate as to the alleged statement of this witness.

We will not undertake to analyze all the exceptions noted. Appellant has assigned errors and in that manner, as well as in brief, has called our attention to them each separately. Of course this was not necessary. Section 389, Title 15, Code. However, it has been helpful to us in finding reference to the serious contentions made on the trial. Many of them relate to rulings made on the cross examination of witnesses for the State, especially Mrs. Edna Noble, wife of defendant, who instituted this prosecution. Appellant insists he was unduly restricted in his cross examination of her, a hostile witness, as well as of other State witnesses. But the length to which the court will permit it to extend in respect to collateral and irrelevant matter under section 443, Title 7, Code, is largely discretionary in the trial court. Birmingham Railway, Light & Power Co. v. Lipscomb, 198 Ala. 653, 73 So. 962; Newell Contracting Co. v. Wheeler, 223 Ala. 323, 135 So. 479. We are not willing to say that this discretion was abused, but trial courts should always remember that cross examination may be "thorough and sifting," section 443, supra, extending to the motives and animus of the witness, especially when that is an important factor in the case.

For the error which we have pointed out, the judgment must be reversed and the cause remanded to the trial court.

Reversed and remanded.

BROWN, LIVINGSTON, LAWSON, SIMPSON and STAKELY, JJ., concur.