117 So.2d 366

Joseph G. **MOORE**

v.

**STATE.**

**7 Div. 561.**

Court of Appeals of Alabama.

May 19, 1959.

Rehearing Denied Aug. 18, 1959.

Scott & Scott, Fort Payne, for appellant.

MacDonald Gallion, Atty. Gen., and Jos. D. Phelps, Asst. Atty. Gen., for the State.

**402**

CATES, Judge.

This is an appeal from a judgment in a nonjury trial which resulted in the guilt of Moore on a charge of reckless driving accompanied by a fine of $25.

The tendencies of the State's evidence were that on September 16, 1957, or thereabouts, Mr. Curtis Hallmark, who lived in Arab, Alabama, was going northeast toward Chattanooga on what was then State road 110 (apparently now denominated as State road 75) in DeKalb County. When he came to an intersection where a side road crossed the main highway (it appears that the side road had stop signs posted immediately before the pertinent entry way into the intersection), Hallmark was traveling at about 40 miles an hour, which was an apparent lawful speed. As he came up to the intersection, he saw Moore driving a large stake-bodied ton and a half truck loaded with cattle coming toward the intersection along the side road. He described the accident as follows:

"A. Well, as I was going north, as I came to this intersection there this fellow here come up the top of the hill, sort of a little grade there coming down. When he got to the intersection where the stop street is he didn't stop. I thought maybe he had a load of something and was going to stop

there in a minute or two. You know, a second or two, but I was not thinking he was going to come clear out in the road. When he did come clear out there, I had to go around the back of the truck and go on the left-hand side of the road.

"Q. Did you run into a ditch? A. I run into a ditch. Then I had a trailer on the back end of my pick-up truck and the trailer began to skid on the side of the road and pulled into the ditch."

After Hallmark was pulled out "through the windshield and got outside," Moore walked up to him and said, "I didn't see you." Moore made the same statement to Mr. H. E. Collins, a highway patrolman.

Mr. Moore testified in his own behalf that he stopped and looked both ways, that he couldn't see or hear anything; it was foggy, "and you couldn't see very far"; and that the first inkling he had of the presence of Hallmark in the vicinity was when he saw two bystanders in an adjoining filling station looking back toward the rear of his truck after he had gotten into the crossing. Moore then saw Hallmark's truck and trailer which had gone past him on his left side, and Hallmark's trailer was "pulling him off in the ditch."

Part of the cross-examination of Mr. Dan Weldon, the crossroads filling station operator, called as a defense witness, went as follows:

"Q. I will ask you if it isn't a fact you and Mr. Satterfield were standing together when Mr. Collins talked to you all? A. Mr. Collins called me behind my meat case and talked to me.

"Q. Mr. Satterfield was there too? A. I won't say, a big crowd at that time. He wasn't right there, there at the store.

"Q. Isn't it a fact you said to Mr. Collins here, 'Mr. Moore didn't stop

when he come into the highway'? A. No, sir, not a fact.

"Q. You say you didn't say that? A. No, sir.

"Q. Did any one in your presence say that while Mr. Collins was talking to you? A. No, sir, me and Mr. Collins were talking over behind the meat case.

"Q. Do you recall whether Mr. Satterfield said that to Mr. Collins on that occasion? A. No, sir, don't recall that. I didn't hear that."

Then Mr. Collins, the investigating patrolman, was put on the stand and asked, concerning Mr. Weldon:

"Q. I will ask you if in his presence he or Mr. Satterfield one didn't make this statement to you there, 'Mr. Moore didn't stop coming into the highway'?"

Upon objection that the question did not touch rebuttal, the special prosecutor claimed he was trying to impeach Weldon's testimony "on the predicate laid." The trial judge allowed the question.

However, the answer was, "The statement was made by either Mr. Weldon or Mr. Satterfield." Several other questions were put going into what transpired when Patrolman Collins talked to Messrs. Weldon and Satterfield, but no objection was taken on the ground of the conversation being inadmissible hearsay (not of the res gestae and not in Moore's presence).

■ At the close of Collins' rebuttal testimony, Moore's counsel moved to exclude because of a variance between the predicate laid and the testimony given.

Certainly, under the principle of Murph v. State, 153 Ala. 67, 45 So. 208 (where the predicate touched on whether one Jones, a State witness, had been tried and convicted, etc., for murder and the would-be impeacher's answer was that he had been convicted for "shooting a man"), there was reversible error in the failure to exclude an answer which did not jibe with the predicate.

In Bridges v. State, 225 Ala. 81, 142 So. 56, 57, when the expected gainsayer gave a negative answer to the crucial question, it was reversible error to permit (over objection) another question: "What did he tell you, chief?" This latter question, of course, represented a departure from the issue at hand.

■ We should be inclined to put the admission of Collins' ambivalent answer, "either Mr. Weldon or Mr. Satterfield," as error without injury. However, adverting to the trial judge's failure to exclude it upon a motion timely made, we must consider that having been apprised of the defendant's outspoken (and well taken) criticism of the testimony, he consciously, in arriving at his conclusion as the trier of fact, took illegal evidence into consideration.

"It has been well settled by the former decisions of this court that when a case is tried by a judge without a jury, and illegal evidence is introduced, it will require a reversal of the judgment unless the remaining evidence is without conflict and is sufficient to support the judgment. * *" Dutton v. State, 226 Ala. 1, 145 So. 581.

We cannot apply Supreme Court Rule 45, Code 1940, Tit. 7 Appendix, and affirm because the reception might be held harmless to the outcome. Twice before this court has been reversed for so doing: Dutton v. State, 25 Ala.App. 314, 145 So. 580, reversed op. cit., supra, and again in Pigford v. Billingsley, 38 Ala.App. 28, 84 So.2d 661, affirmed (with last paragraph of opinion disapproved) at 264 Ala. 29, 84 So.2d 664.

We have pretermitted whether or not the attempt to impeach Satterfield (who did not testify) was—in Weldon's cross-examination and impeachment—introducing an issue foreign to the trial, and whether or not the consequent attempt to turn the

enquiry as to what Satterfield might or might not have said away from Moore's hearing so as to ricochet discredit upon Weldon's testimony was impeachment upon an immaterial issue. See Seale v. Chambliss, 35 Ala. 19, Noble v. State, 253 Ala. 519, 45 So.2d 857.

Reversed and remanded.